Argued and submitted December 20, 1995, affirmed February 7, petition for review denied April 9, 1996 (323 Or 136)

## FRIENDS OF NEABEACK HILL
### and John P. Bolte,
*Petitioners,*

*v.*

## CITY OF PHILOMATH
### and Schneider Homes, Inc.,
*Respondents.*

### (95-027; CA A90489)

911 P2d 350

Hilary E. Berkman argued the cause and filed the brief for petitioners.

Scott A. Fewel argued the cause for respondent City of Philomath. George B. Heilig argued the cause for respondent Schneider Homes, Inc. On the brief were James K. Brewer and Eickelberg & Fewel, and George B. Heilig and Cable, Huston, Benedict & Haagensen.

Before De Muniz, Presiding Judge, and Haselton and Armstrong, Judges.

De MUNIZ, P. J.

## De MUNIZ, P. J.

Petitioners seek review of LUBA's remand of respondent City of Philomath's approval of respondent Schneider Homes, Inc.'s application to develop a subdivision in the Neabeack Hill area. Petitioners oppose the application, and they assign error to a number of LUBA's rulings in which it rejected their contentions. We write to address only their argument that LUBA erred in sustaining the city's interpretation of Resources and Hazards Policy 6 of its comprehensive plan as allowing the disturbance and partial removal of a wooded Goal 5 resource site in the vicinity of the development. We affirm.

Before considering the specifics of the city's decision approving the application, LUBA's decision and the parties' arguments here, an understanding of the relevant aspects of the city's Goal 5 planning history is necessary. The city's comprehensive plan and land use regulations are acknowledged and have successfully undergone periodic review. As part of its planning program, the city gave the site in question a so-called "2A designation" for purposes of Goal 5. The city concluded that there were no uses that conflicted with the resource, and the designation was therefore dictated by Goal 5 itself ("[w]here no conflicting uses for such resources have been identified, such resources shall be managed so as to preserve their original character"), and by a provision of LCDC's Goal 5 implementing rule, OAR 660-16-005(1) (if no conflicting uses are identified, the local government shall "insure preservation of the resource site").

The city explained its 2A designation under the goal and rule:

"This area is covered in primarily oak forest, and is visible from most of Philomath. It is one of the few oak covered hillsides visible from Philomath. The current Comprehensive Plan Designation is Low Density Residential, the County zoning is Urban Residential - 5 acre minimum; City zoning upon annexation will be Low Density Residential (R-1). Due to the low density plan and zone designations, the site can be developed in a way that will preserve the existing vegetation. Based on this information, the site is designated '2-A.'"

To implement the designation, the city included Policy 6 in its plan. The policy provides:

> "The natural vegetation located on Neabeack Hill shall be preserved to the maximum extent possible by limiting clearing to that which is necessary for housing, roads, and utilities."

As we will discuss in some detail below, petitioners' appeal from the particular land use decision in question does not provide a proper occasion for re-evaluating the consistency of the acknowledged plan in general, or Policy 6 in particular, with Goal 5 or the LCDC rule. Nevertheless, some observations that appear to raise questions along those lines are necessary to an understanding of the issues that are now presented and of our disposition. Arguably, the city's Goal 5 process and its promulgation of Policy 6 were at odds with the goal and OAR 660-16-005(1), in three connected respects, *as of the time that its plan was found to comply with the goals in the periodic review process*: first, the residential use allowed by the zoning is *ipso facto* one that conflicts with the resource, and that required further analysis pursuant to the goal and the implementing rules rather than the automatic designation of the site as 2A; second, and correspondingly, the "preservation of the resource" approach embodied in the 2A designation made residential use in the resource area impermissible; and third, the city could not properly, as Policy 6 provides, allow residential and related development that conflicts with the preservation of the resource in the area that is designated as a preservation site *because* no conflicts were identified.[1]

In acting on the present application, the city governing body interpreted Policy 6 as permitting disturbance and some removal of the wooded resource as proposed by the application, subject to conditions imposed by the city. Petitioners contended to LUBA that that was a reversible misinterpretation of the plan policy. Their contention was based on a number of grounds, including that the interpretation was

---

[1] We emphasize that, here and elsewhere in the text, our comments that suggest inconsistencies between the plan and the goal and the rule are designed only to state propositions that underlie petitioners' arguments. The question of whether those propositions are correct is not before us, and we do not decide it.

contrary to Goal 5 and OAR 660-16-005(1) and, consequently, should be reversed under ORS 197.829(1)(d) (*formerly* ORS 197.829(4) (1993)). ORS 197.829(1) provides:

"The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a)  Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b)  Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c)  Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d)  *Is contrary to a statute, land use goal or rule that the comprehensive plan provision or land use regulation implements.*"[2] (Emphasis supplied.)

Petitioners assert:

"LUBA affirmed an interpretation of Policy 6 which allows development to the full extent zoning permits, without regard to vegetation. That is, under LUBA's and the city's interpretation, all of the trees can be removed from Neabeack Hill if it is 'necessary for housing, roads and utilities' as long as the development is allowed by the zoning. In other words, 'preserved to the maximum extent possible' in Policy 6 can mean 'not at all.' LUBA erred in affirming that interpretation.

"* * * * *

"The city's Comprehensive Plan Resources and Hazards Policy #6 implements Goal 5 and OAR 660-16-005. Where, as here, no conflicting uses have been identified, the city's Goal 5 Inventory and Analysis Comprehensive Plan Amendment requires that a 2A resource be managed 'so as to preserve its original character.' OAR 660-16-005 requires that policies and ordinances 'insure preservation of the resource site.' LUBA cannot affirm the city's interpretation of Policy 6 if it is 'contrary to a land use goal or rule it implements.' ORS 197.829(4).

---

[2] Respondents question whether petitioners raised any issue under ORS 197.829(1)(d) before LUBA. We conclude that the statute was adequately raised. There is no dispute that Policy 6 "implements" Goal 5 and the LCDC implementing rule, within the meaning of the statute.

"Here, the most generous reading of the city's interpretation would allow removal of at least 75 percent of the trees and nearly the entire understory from the proposed development site, while adding 100 homes, associated roads, utilities and accessories. That interpretation is contrary to the Goal and Rule that the policy implements. It is impossible to retain the character of the oak forest on Neabeack Hill while removing nearly all of its vegetation and building 100 homes. Because the interpretation that LUBA affirmed is contrary to Goal 5 and OAR 660-16-005, LUBA erred in affirming it, and its order is unlawful in substance. Because the issue of whether the city's interpretation is contrary to the goal it implements is a question of law, LUBA's order should be reversed." (Footnotes and citation to record omitted.)

Like respondents', LUBA's reasoning concerning the city's interpretation of Policy 6 did not rely on ORS 197.829(1)(d) to any cognizable extent. Rather, LUBA said:

"Petitioners misconstrue the requirements of Policy 6. As with the 2A designation, Policy 6 recognizes the site's R-1 residential zoning. It does not require that the city reduce the permitted density to preserve more natural vegetation than necessary for development consistent with the R-1 zone. So long as the proposed development provides for an average lot size of no less than 7,000 square feet, Policy 6 requires only that disturbances of natural vegetation be limited to that which is necessary for housing, roads, and utilities.

"* * * * *

"Policy 6 does not, by its terms, limit the amount of clearing necessary for housing, roads and utilities. Nonetheless, the city's application of Policy 6 to this subdivision does reflect an interpretation that Policy 6 also requires a demonstration that the proposed development is designed in a manner that will preserve the site's natural vegetation and thereby limit the amount of clearing necessary for housing, roads and utilities. The city's interpretation actually ensures more preservation than the express language of the policy requires.

"Petitioners do not contest the evidence upon which the city's findings are based. Rather, their substantial evidence argument is based upon either their disagreement with the density allowed by the R-1 zone, or upon an interpretation

that Policy 6 imposes additional restrictions on the density allowed in the R-1 zone.

"Petitioners have not established that the city's interpretation of Policy 6 is clearly wrong. We affirm the city's interpretation. *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992); ORS 197.829."

Relatedly, LUBA rejected petitioners' contention that the city's action was inconsistent with the area's 2A designation, and explained that petitioner's argument

"is, in effect, a challenge to the city's decision to zone the site for residential development, rather than open space. That decision is not subject to review during this process, and petitioners cannot collaterally attack that decision by arguing that residential development is inconsistent with the [acknowledged] 2A decision. * * * Nor must the city address Goal 5 compliance through this [subdivision] approval proceeding." (Citations omitted.)

In sum, LUBA concluded that the city's interpretation was consistent with the language of the acknowledged comprehensive plan provision that was the subject of the interpretation, and that petitioners' argument amounted to a collateral attack on the acknowledgment of the provision in the guise of a challenge to the city's interpretation of it. According to petitioners, however, their argument was no such thing, but was an assertion that the interpretation was contrary to the goal and rule, and that ORS 197.829-(1)(d) makes an *interpretation* reversible on that basis notwithstanding the fact that the *provision* that the city interpreted had been acknowledged as complying with the goal and rule.

Although a case could be made that petitioners' argument and LUBA's response are ships passing in the night, the more descriptive metaphor may be that they are two ships traveling in a legislatively created Bermuda Triangle. ORS 197.829 was enacted by the 1993 legislature in response to *Clark v. Jackson County*, where the Supreme Court devised a deferential scope of LUBA and judicial review of local interpretations of local land use legislation. The 1993 statute had the purpose of "codifying [*Clark*] in part and reversing it in part." Minutes, Senate Agricultural and Natural Resources Committee, July 20, 1993, p 4. The

first three paragraphs of ORS 197.829(1) implement *Clark*; the fourth modifies it by providing that local interpretations are not entitled to deference if they deal with local provisions that implement and are challenged as contravening a state statute, planning goal or rule that explicates a goal. *See Cope v. City of Cannon Beach*, 115 Or App 11, 16-18, 836 P2d 775 (1992), *aff'd on unrelated grounds* 317 Or 339, 855 P2d 1083 (1993) (describing problems with *Clark* that ORS 197.829(1)(d) was apparently aimed at remedying).

■      However, under other statutes that the 1993 legislature did not alter, local land use decisions by jurisdictions with acknowledged plans and regulations are not reviewable for compliance with the statewide goals and rules.[3] ORS 197.175(2)(c) and (d) provide, respectively, that local governments whose plans and regulations are not acknowledged must make land use decisions that comply with the goals but, after acknowledgment, land use decisions made under acknowledged plans and regulations need only comply with the acknowledged local legislation. Correspondingly, ORS 197.835(8) confines LUBA's review of local decisions made solely under local plans and regulations to the question of whether the decision complies with the local legislation. *See, e.g., Foland v. Jackson County*, 311 Or 167, 807 P2d 801 (1991); *Byrd v. Stringer*, 295 Or 311, 666 P2d 1332 (1983) (interpreting statutes in the manner indicated).

We have also held specifically, in cases decided before the enactment of ORS 197.829, that LUBA and we may not entertain arguments concerning the compliance of acknowledged local land use legislation with the statewide goals in the context of reviewing particular land use decisions to which the local legislation is applicable. Rather, we have concluded, any errors in the acknowledgment process can only be rectified through the Land Conservation and Development Commission's periodic review procedures. *Urquhart v. Lane Council of Governments*, 80 Or App 176, 721 P2d 870 (1986).

---

[3] However, they are reviewable for compliance with applicable state statutes. *Forster v. Polk County*, 115 Or App 475, 839 P2d 241 (1992). Nothing in this opinion bears on the application of ORS 197.829(1)(d) in cases where the state provision that a local interpretation assertedly violates is statutory.

■ The principal difference between ORS 197.829-(1)(d) and the other statutes we have discussed is that the latter deal with the applicability and reviewability of the goals in connection with local land use *decisions*, while the former relates to whether a local *interpretation* of local legislation complies with the goals. However, that might not be much of a distinction in most instances. We observed in *Cope* that "[t]he interpretation of local legislation plays a major role in virtually every land use decision." 115 Or App at 18.

Nevertheless, ORS 197.829(1) *is* concerned only with the review of interpretations. In *McKenzie v. Multnomah County*, 131 Or App 177, 884 P2d 868 (1994), we suggested that the proper sequence of analysis under the statute is to determine whether the interpretation is an affirmable statement of the meaning of the local legislation before considering whether the interpretation is contrary to state law. We said:

> "If the county's interpretation is contrary to the express language of its ordinance, the interpretation is reversible under ORS 197.829(1)[(a)], and it is immaterial and unnecessary to decide whether the interpretation violates a state statute and is therefore also reversible under ORS 197.829[(1)(d)]." 131 Or App at 181 (footnote omitted).

This case differs from *McKenzie* in that, here, the city's interpretation is not even arguably an incorrect statement of what Policy 6 means. LUBA rightly noted that petitioners' arguments lose sight of the fact that the provision very expressly makes the preservation of the resource subject to the residential needs for which the area is zoned. Although petitioners protest otherwise, the real target of their argument is Policy 6 itself, and the thrust of the argument is that the policy and the planning process that produced it are contrary to Goal 5 and OAR 660-16-005(1), notwithstanding their acknowledged status. It is the plan policy, not the city's interpretation, in which the problem that concerns petitioners originates: by its express terms, Policy 6 makes the preservation of the supposedly protected resource dependent on the necessities of conflicting uses that were not identified as such by the city in its planning process.

Petitioners' point may be abstractly correct. There is no question, however, that, if petitioners' argument took the form of a direct challenge to the consistency of Policy 6 with

the goal and the rule, it would fail. The statutes and case authority discussed above make clear that the goal compliance of acknowledged local legislation cannot be challenged or revisited in the review of particular land use decisions to which the legislation is applicable. In a very real sense, the question comes down to whether ORS 197.829-(1)(d) allows a challenge that cannot be made directly to be made by indirection: to assert that a correct interpretation of an acknowledged plan provision violates the goals is exactly the same exercise as urging that the provision itself violates them.[4]

To answer the question, we turn to the methodology for statutory interpretation set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1132 (1993). The text of ORS 197.829(1)(d), standing alone, militates for a "yes" answer. It is unambiguous, and it provides that an interpretation that is contrary to a state goal or rule is reversible. Under *PGE*, however, the context of the statute is as important to its interpretation as the text is. Here, the context includes the statutes we have discussed relating to the inapplicability of the goals to post-acknowledgment land use decisions and their review.

In more usual situations, it might be that the distinction between decisions and interpretations would allow the contextual statutes and ORS 197.829(1)(d) to operate literally and consistently in their respective spheres. We have noted, however, that that distinction is thin in all circumstances, and it is nonexistent in this setting and ones like it. There is no difference here between the goal compatibility of the interpretation and that of the acknowledged plan provision. To hold that the interpretation can be reviewed for inconsistency with the goal and rule in situations such as this one would be wholly at odds with ORS 197.175(2)(c) and (d) and ORS 197.835(8).

It could be argued that ORS 197.829(1)(d) is so inconsistent with the other cited statutes that the former impliedly repeals the latter. However, as we understand

---

[4] We recognize that there are interpretations that are not reversible under ORS 197.829(1)(a)-(c), but that are not "correct" in the literal sense. In cases where that divergence exists, the analysis *might* differ from our reasoning here. This is not such a case.

*PGE*, if the text and context of a statute point in opposite directions — as they do here — the conundrum should not be lightly resolved by concluding without further inquiry that the text impliedly repeals the context.[5]

■      Instead, the next step is to consider the legislative history. We have done so here, and it is of no assistance. That brings us to the last step in the *PGE* methodology — resort to "general maxims of statutory construction." 317 Or at 612. Generally, in the cases where resort to that last step has become necessary, little explanation has been offered by the Supreme Court or us regarding *which* maxim has been chosen to be accorded what amounts to decisive significance. In this case, however, the reason for our selection is fairly self-evident. We resort to the maxim stated in *State ex rel Appling v. Chase*, 224 Or 112, 117, 355 P2d 631 (1960): the courts "are required to harmonize apparent conflicts within a statute if it is possible to do so."[6]

■      Applying that principle here, we conclude that a goal or rule compliance challenge cannot be advanced under ORS 197.829(1)(d) when, however phrased, the argument necessarily depends on the thesis that the acknowledged local land use legislation itself does not comply with a goal or rule, and when a direct contention that the acknowledged legislation is contrary to the goal or rule could not be entertained under ORS 197.835. Situations undoubtedly will arise where that rule will prove difficult to apply. The line between an interpretation and the provision it interprets will not always be sharp.

■      This is not such a situation. This case presents an extreme example of an argument that cannot be considered under ORS 197.829(1)(d) as we have construed it: as we have discussed, petitioners' position can only be characterized as being that the city's interpretation violates the goal and rule

---

[5] For reasons that will become clearer as we progress, we do not consider this to be a situation where an implied repeal has occurred. The statutes "can function together," *Harris v. Craig*, 299 Or 12, 16 n 1, 697 P2d 189 (1985), unless they are construed in a way that prevents them from doing so. However, such a construction would not be an implied repeal by the legislature, but a judicial repeal.

[6] ORS 197.829(1)(d) and ORS 197.835(8) are both provisions that govern LUBA's review methodology and are part of the same statutory scheme. ORS 197.175(2)(c) and (d) are *in pari materia* with ORS 197.835(8).

solely because the plan provision that the city interpreted violates those state provisions.[7]

We conclude that LUBA did not err by rejecting petitioners' argument under ORS 197.829(1)(d) *sub silentio*. We have considered petitioners' other arguments and assignments and reject them without discussion.

Affirmed.

---

[7] At the other extreme, of course, are situations where the acknowledged legislation is capable of an application that is fully consistent with the goals and rules, but the local interpretation is not. A hypothetical example may be of some use. County X's acknowledged land use regulations provide for three alternative minimum lot sizes in exclusive farm use zones. In response to a particular application, the governing body interprets the lot size provisions as allowing the smallest of the three to be used for the most unintensive of farm uses, with the effect that a "hobby farm" can be created. In an appeal from the land use decision granting that application, a tenable Goal 3 challenge to the interpretation of the lot size provisions could clearly be made without any concomitant challenge to the provisions themselves, even though the interpretation may not be in direct conflict with the language of the provisions or otherwise reversible under ORS 197.829(1)(a)-(c).

We also note that our holding does not foreclose the application of ORS 197.829(1)(d) in situations where the interpretation is challenged as violating a goal or rule for reasons that are independent of arguable bases on which the goal or rule consistency of the interpreted provision itself might be questioned.