Argued and submitted January 18, reversed and remanded with instructions February 28, petition for review denied July 16, 1996 (323 Or 690)

John S. CARLSON
and Robert Anderson,
*Petitioners,*

*v.*

CITY OF DUNES CITY,
Harry R. Wilkes and Scott B. Robbins,
*Respondents.*

(LUBA No. 95-020)

William A. PARSHALL
and Robert Anderson,
*Petitioners,*

*v.*

CITY OF DUNES CITY,
Harry R. Wilkes and Scott B. Robbins,
*Respondents.*

(LUBA No. 95-023; CA A90746)

911 P2d 1279

Linly A. Ferris argued the cause for petitioners. With her on the brief were Robert E. Stacey, Jr., and Ball, Janik & Novack.

Paul V. Vaughan argued the cause for respondent Harry R. Wilkes. With him on the brief was Hershner, Hunter, Moulton, Andrews & Neill.

Meg E. Kieran argued the cause for respondent Scott B. Robbins. With her on the brief was Joseph J. Leahy.

No appearance for respondent City of Dunes City.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioners seek review of LUBA's decision remanding on one ground, but rejecting most of petitioners' contentions concerning the City of Dunes City's approval of respondents Wilkes' and Robbins' (collectively respondents) tentative plat for a subdivision. We reverse.

In 1966, the city adopted ordinance 15, which purported to annex an area that includes the proposed subdivision location. It is unclear what became of the proposed annexation, but there is no record that the procedures for recording and filing the appropriate documentation with county and state officials were completed. It is reasonable to say that, at the time that the subdivision planning involved here was initiated and at the times of several other relevant events, the fact that the 1966 annexation had been proposed and/or the extent to which it had progressed were generally, if not entirely, unknown.[1] Indeed, in a related 1993 application to the city, Wilkes sought to have the city annex his property then and to amend its urban growth boundary (UGB) to include the property. Thereafter, the 1966 annexation ordinance was rediscovered, *see* note 5, and those measures were deemed unnecessary; respondents filed the present application, and the city approved it.

On appeal to LUBA, petitioners argued, *inter alia*, that the 1966 annexation was invalid *and* that the property was not within the city's UGB and, therefore, could not be used for the urban development in question. LUBA rejected the first argument on the basis of ORS 12.270,[2] which

---

[1] We emphasize that that *fact* is not the basis for our holding, which turns ultimately on a question of *law*.

[2] ORS 12.270 provides, as relevant:

"On September 13, 1975, any proceeding which establishes or alters the boundaries of a governmental subdivision previously or hereafter initiated and purported to be effected in accordance with applicable legal requirements shall be conclusively presumed valid for all purposes one year after the purported effective date of the action. No direct or collateral attack on the action may thereafter be commenced. This statute of limitations includes but is not limited to the following proceedings:

"* * * * *

"(5) Annexations under ORS 222.111 to 222.180, 222.750 and 222.840 to 222.915."

establishes a conclusive presumption of validity for certain annexations. LUBA did not address the second argument.

In their first two assignments to us, respectively, petitioners contend that LUBA erred by not addressing the second argument and by not reversing the city's decision on the basis of that argument. We agree that LUBA erred by not addressing the issue. The question is whether we should now remand for LUBA to do so, or whether we can resolve the issue now, as a matter of law, pursuant to petitioners' second assignment. Because the case can be finally resolved by us now and in the interest of a prompt disposition, ORS 197.805, we will follow the latter course.

For purposes of our analysis, we assume without deciding that the area has been effectively annexed. The city's acknowledged comprehensive plan provides, in its text, that the "urban growth boundary is coincident with the current city limits." Respondents reason from that plan provision that, if the area has been annexed, it is within the city limits and, therefore, within the UGB. However, petitioners point out, correctly insofar as the record discloses, that the plan maps and all of the other nontextual plan documents submitted to the Land Conservation and Development Commission (LCDC) during the acknowledgment and related processes either show the area to be outside the UGB or inferentially demonstrate its absence. Therefore, they reason, the area is not part of the UGB as acknowledged by LCDC, and Goal 14 precludes urban development and uses on it.[3]

The city council interpreted the plan to mean that the

> "comprehensive plan language takes precedence over the diagrams and * * * the lands annexed by Ordinance No. 15 are within the city limits and are within the comprehensive plan urban growth boundaries."

---

[3] The city's land use legislation was acknowledged in 1979 and survived periodic review in 1986.

Counsel for the Department of Land Conservation and Development represented to the city in the present proceeding that the "annexation, though ostensibly completed in 1966, was not reflected in the city's submittal to LCDC." A representative of the Lane Council of Governments provided a similar opinion.

Respondents argue that, if an interpretation was even required, the city council's interpretation of the plan is entitled to deference under ORS 197.829 and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). Petitioners contend that the city's interpretation is reversible under ORS 197.829(1)(d) because it is contrary to Goal 14. They also argue, correctly, that the city's interpretation is not entitled to deference under the statute or *Clark* because this case turns on a question of state law.

■ ORS 197.829 and *Clark* pertain to the standard of LUBA review of local interpretations of local land use legislation. We recently discussed the application of ORS 197.829 in *Friends of Neabeack Hill v. City of Philomath*, 139 Or App 39, 911 P2d 350 (1996). However, unlike *Friends of Neabeack Hill*, this case does not involve a local interpretation of the meaning of an acknowledged plan provision. The question here is *what* was acknowledged *by* LCDC as the city's UGB. That is a pure question of state law, not one about the interpretation or the meaning of acknowledged local legislation or whether an interpretation complies with the state provisions enumerated in ORS 197.829(1)(d). *Testa v. Clackamas County*, 137 Or App 21, 903 P2d 373 (1995); *see also Ramsey v. City of Portland*, 115 Or App 20, 24, 836 P2d 772 (1992). Petitioners are correct in their conclusion that we owe no deference to the city's interpretation.

■ Respondents contend that the plan provision is unambiguous and "states that the [UGB] is [coincident] with the City limits."[4] Hence, they reason, the annexed territory is *ipso facto* within the UGB under that provision. We disagree. The plan provision does not identify any territory specifically; it simply states that *all* territory fitting a categorical description is within the UGB. The only specific territory that *was* identified as being within the UGB in what the city submitted to LCDC was in the maps and other nontextual materials, and the area containing respondents' property is outside the UGB delineated in those materials.

---

[4] They and the city also relied on other language in the plan. For reasons similar to our discussion of their arguments based on the cited provision, the other language also does not aid them.

■      Stated summarily, nothing before LCDC expressly informed it that the relevant area was *within* the UGB, and the materials that were before LCDC showed the area as being *outside* the UGB. If respondents' argument assumes that the textual provision equating the city limits and the UGB somehow *impliedly* communicated that *their* property was within the boundary, the assumption is incorrect. The textual provision says nothing about the specific property, and there is no necessary universal correlation between a city's limits and the location of its UGB; indeed, it is unlawful for a city to make the two coincide without justifying that action through the Goal 14 process. *1000 Friends v. LCDC*, 292 Or 735, 642 P2d 1158 (1982). The corollary is that, in reviewing a city's proposed UGB for compliance with Goal 14, LCDC must be concerned with the urban character of the specific land that is proposed for inclusion in the UGB and not simply with its status as incorporated or unincorporated. Here, everything that the city submitted to LCDC about this specific land indicated that it was outside the UGB, and nothing in the city's submissions indicated that it was included.[5] We conclude, as a matter of law, that the proposed subdivision location is outside the UGB that LCDC acknowledged.

In their remaining assignment, petitioners contend that LUBA erred by holding that the purported 1966 annexation was valid and effective. However, the point is academic. The subdivision use is urban in character, and it cannot be conducted on land outside the city's UGB, at least without an appropriate goal exception. *1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 724 P2d 268 (1986); *Hammack & Associates, Inc. v. Washington County*, 89 Or App 40, 747 P2d 373 (1987). It is immaterial whether the land for which the urban development is proposed is part of the city or not. The fact that it is outside the UGB is decisive.

-----

[5] If respondents' point is that LCDC could have, or had to, take something akin to administrative notice of the annexation and of the territory's location within the city limits, we again disagree. The city council's 1995 order approving the tentative plat contains the candid finding that "[n]o present city officials were aware of the 1966 annexation until recently and after a review of city ordinance files." We decline to ascribe greater constructive knowledge to LCDC about the city's territory than the actual knowledge possessed by the city's elected and other responsible personnel.

Reversed and remanded with instructions to reverse city's approval of tentative subdivision plat.