Argued and submitted September 23, reversed on petition; reversed and remanded for further consideration on cross-petition December 22, 1999

## OREGON SHORES CONSERVATION COALITION
and the Friends of the Historic 804
County Road and Hiking Trail, Inc.,
*Respondents - Cross-Petitioners,*
*and*
## 1000 FRIENDS OF OREGON,
*Respondent,*
*v.*
## LINCOLN COUNTY,
Elaine Armes, John Arthur, Beverly Arthur,
Robert Barber, Leslie Barber, Gloria Holmes Baehr,
Merry Berry, Burd Bicksler, Joan Bicksler,
David Bishop, Sharon Bishop, Steven Brous,
Susan Brous, Bonita Brown, Rick Brown,
Linda Jackson Brown, Anna Lou Case, Evelyn Cahoon,
Gladys Clair, Robert Clair, Melvin Clair,
Stephen Davies, Elizabeth Davies, Robert Diprete,
Kathryn Poland, Mary Elena Dochterman,
Patricia Bridges, Donald Durham, George Goble,
Joel Evans, Sheila Evans, Craig Gilbert,
Linda Gilbert, Ada Griffiths, John Griffiths,
Anna Jackson, Phillip King, Mary King,
Estate of Fred Dudley, Ruby Jones, Carol Kocher,
Marilyn Kocher, Tom Meados, Hope Meados,
John McHenry, Margaret McKeowen, Jerry McCall,
Meredith McCall, Howard Osborn, Paul Pirrucello,
Nola Pirrucello, Arthur Roberts, Fern Roberts,
Jose Salazar, Linda Wassom Salazar, Arthur Sleight,
Betty Sleight, William Stinnett, Robin Stinnett,
Eugene Sullivan, Linda Sullivan,
John Toepher, Nina Toepher, Richard Stanley Urbanski,
William Verstegen, Everett Miles, Elva Miles,
Sigrid Bratsch, Malcolm Byers, June Byers, Max Wales,
Jeanne Wales, and Patrice Bierman,
*Petitioners - Cross-Respondents,*
*and*
## CITY OF YACHATS
and David H. Chamberlin,
*Intervenors - Respondents below.*
(LUBA No. 98-175; CA A106967)

992 P2d 936

Wayne Belmont, Lincoln County Counsel, argued the cause and filed the briefs for petitioner - cross-respondent Lincoln County.

Michael E. Farthing argued the cause for petitioners - cross-respondents Elaine Arms, *et al.* With him on the briefs was Gleaves Swearingen Larsen Potter Scott & Smith LLP.

Steven R. Schell argued the cause for respondents - cross-petitioners.

Christine M. Cook argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

DEITS, C. J.

## DEITS, C. J.

Lincoln County (county) and petitioners Armes *et al* (petitioners) seek review of LUBA's decision remanding the county's vacation of a portion of County Road 804 that is located in its entirety in the City of Yachats (city). The respondents (respondents) other than 1000 Friends of Oregon (1000 Friends) cross-petition from LUBA's decision. We reverse on both the petition and the cross-petition and remand to LUBA for further consideration.

We quote the facts from LUBA's opinion:

"In 1890, Benton County platted what became Lincoln County Road 804, a 60-foot wide unimproved right-of-way running south along the beach from the City of Waldport to the Yachats River. Just north of the Yachats River, within the present City of Yachats, the platted 804 right-of-way left the beach and traversed a low, rocky bluff running south to the Yachats River. We follow the parties in referring to the relevant portion of the 804 right-of-way within the City of Yachats as South 804. South 804 was never improved or used extensively for transportation, although it continued to be shown on county maps, and was used to some extent as a footpath along the bluff from the 1890s into the 1970s.

"In 1953, the Ocean Crest Subdivision was platted north of the unincorporated community of Yachats, placing 30 lots between the bluff and a roadway shown on the plat as Ocean View Drive. The subdivision plat did not depict the South 804 right-of-way and overplatted the westward portion of the 30 lots within that right-of-way. The City of Yachats was incorporated in 1967, including Ocean Crest Subdivision. By the 1970s, most of the 30 lots adjoining the bluff were developed with dwellings, with many structures built wholly or partially within the South 804 right-of-way. Ocean View Drive was developed as a public street parallel to and east of the bluff and the South 804 right-of-way.

"In 1997, the county resurveyed the South 804 right-of-way, and found that the majority of South 804 is on top of and parallel to the bluff, but that due to erosion of the bluff, portions of the platted right-of-way lie west of and below the current bluff-line. In September 1997, several owners within the Ocean Crest Subdivision filed a petition with the

county to vacate South 804 from the northerly boundary of the Ocean Crest Subdivision to the ten-mile marker east of Highway 101. The county board of commissioners conducted proceedings, and determined to vacate the South 804 right-of-way from the northerly boundary of the subdivision to the First Street right-of-way. The county prepared findings to that effect. Pursuant to ORS 368.361(3), the county submitted its findings to the City of Yachats for its concurrence. On September 10, 1998, the city adopted a resolution concurring with the county's determination to vacate the relevant portion of South 804 and incorporating the county's findings. On September 16, 1998, the county board of commissioners adopted its final decision vacating the South 804 right-of-way." (Footnote omitted.)

Respondents appealed the decision and 1000 Friends intervened on respondents' side. The county and petitioners moved to dismiss the appeal, asserting that the road vacation was not a "land use decision" subject to LUBA's review. Respondents opposed the motion, contending, *inter alia*, that the county's decision entailed the application of— and violated—Implementation Requirement 6 (IR 6) of Goal 17 (Coastal Shorelands), the city comprehensive plan policy C.6 (policy 6), and sections 3.090 and 3.100 of the city zoning ordinance (YZO).[1] Accordingly, respondents argued, the

---

[1] IR 6 provides:

"Local government in coordination with the Parks and Recreation Division shall develop and implement a program to provide increased public access. Existing public ownerships, rights of way, and similar public easements in coastal shorelands which provide access to or along coastal waters shall be retained or replaced if sold, exchanged or transferred. Rights of way may be vacated to permit redevelopment of shoreland areas provided public access across the affected site is retained."

Policy 6 provides:

"The city will review proposals for vacation or sale, exchange or transfer of public ownerships, easements, or rights-of-way which provide access to or along the Yachats River or ocean. Existing public ownerships, rights-of-way, and similar public easements in estuary or ocean shorelands which provide access to or along the estuary or ocean shall be retained or replaced if sold, exchanged or transferred. Rights-of-way may be vacated to permit redevelopment of existing developed shoreland areas provided public access across the affected site is retained."

YZO 3.090(2)(a) provides:

"No structure, alteration or other development shall be permitted within the County Road No. 804 right-of-way and prescriptive easements except for a public recreation trail and improvements which are necessary or accessory to the construction or maintenance of a public recreation trail."

county's action was a "land use decision" under any or all of ORS 197.015(10)(a)(A)(i),(ii) and (iii).[2] We emphasize that, if *any* of those provisions is applicable to the county's decision, then it was a "land use decision" and LUBA had jurisdiction.

The LUBA majority resolved the jurisdictional question by concluding that "*at least* Goal 17 and IR 6 are applicable to the challenged decision." (Emphasis added.) The county's authority to vacate the road located inside the city stems from ORS 368.361(3), which provides that "a county governing body may vacate property that is under the jurisdiction of the county and that is entirely within the limits of a city if," as occurred here, the "city, by resolution or order, concurs in the findings of the county governing body[.]" LUBA reasoned that, in carrying out that authority, the county was required to apply its own acknowledged land use legislation or, under ORS 197.646, directly apply any new or amended statute, goal or Land Conservation and Development Commission (LCDC) rule that the county had not amended its own legislation to implement. Since Goal 17 and IR 6 were adopted in their present form in 1984 and had not been implemented in the county's comprehensive plan or land use regulations, the LUBA majority concluded that IR 6 was directly applicable to this decision.

On the merits, the majority held that the county had misconstrued and failed to demonstrate compliance with IR 6. LUBA interpreted the provision to mean "that existing alternate access points [to coastal shorelands] in the vicinity of the vacated right-of-way that are not part of the 'affected site' cannot satisfy IR 6." In so holding, LUBA rejected the

---

YZO 3.100 is similar in substance to Policy 6, but it relates specifically to city review of petition vacation proposals pursuant to ORS 271.080 *et seq.*

[2] ORS 197.015(10)(a)(A) defines "land use decision," as, *inter alia*:

"A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i) The goals;

"(ii) A comprehensive plan provision;

"(iii) A land use regulation; or

"(iv) A new land use regulation[.]"

In substance, the jurisdictional question and the merits are largely intertwined, but they do invoke the separate questions of whether the provisions apply and whether the decision violates them.

county's and petitioners' view that alternative access in the general vicinity was adequate to meet the IR 6 requirement of retaining access across the "affected site," but it also disagreed with respondents' thesis that "retaining access 'across the affected site' necessarily requires that access be retained within the burdened lots or within the vacated right-of-way itself." Rather, LUBA concluded that, "at least where the vacated access is 'along the ocean shore,' " the retained access across the "affected site" must "also be within coastal shorelands," and the extent of the coastal shorelands must be determined as a part of identifying the "affected site." Consequently, the LUBA majority held that the county's findings were deficient in that they did not identify the affected site or the extent of the coastal shorelands and insofar as they determined that the required access has been retained by reason of alternatives in the general vicinity.

The LUBA majority, therefore, remanded the county's decision on the ground that it had not been shown to comply with IR 6. However, LUBA rejected respondents' other assignments, including, *inter alia*, their contentions that the road vacation violated the city provisions cited earlier.[3] Although the language of policy 6 is virtually identical to that of IR 6, LUBA held that the road vacation was not inconsistent with it, because:

> "[Respondents] point to language in the city's comprehensive plan inventory that requires the city to 'adopt a plan policy and implementing measure to protect the County Road #804 right-of-way and prescriptive easements from alterations which would prevent the establishment and maintenance of a segment of the Oregon Coast Hiking Trail.' [Respondents] argue that [that provision and policy

---

[3] The county and petitioners argued to LUBA, and the county repeats here, that LUBA should not have reached the contentions, because respondents *appealed* from the county's decision rather than the city's concurrence in it, but their assignment of error was to the effect that the city misconstrued its plan and zoning ordinance in conjunction with its concurrence. LUBA disagreed, explaining that, under ORS 368.361(3), the county's decision was the final and appealable one, and that the county itself made "findings" concerning the permissibility of the road vacation under the city provisions. Hence, LUBA concluded, respondents' "misplaced focus on the city rather than the county * * * does not prevent us from addressing the merits of this assignment of error[.]" We agree with LUBA. Given the statutory scheme, the city's concurrence is essentially an interlocutory stage in and part of the county's final decision.

6], read together, require [the] city to preserve South 804 for use as a hiking trail. Accordingly, [respondents] contend, the county's vacation of South 804 is inconsistent with [the city's] comprehensive plan provisions.

"[Petitioners] argue, and we agree, that the inventory language [respondents] rely on refers to *North* 804 and not to South 804. Further, even if that language could be construed to refer to South 804, YCP Policy C.6 expressly allows for vacation of rights-of-way, as long as public access across the affected site is retained." (Emphasis in original.)

For the same reason, LUBA held that YZO 3.090 did not benefit respondents and that YZO 3.100 also did not because that provision applies only to vacations, unlike this one, allowed pursuant to ORS 271.050 *et seq. But see* ORS 368.361(4).

■      The concurring member of LUBA arrived at the same ultimate conclusions as the majority did, but in essentially the opposite way. He would have held that IR 6 was inapplicable to the decision but would have based the remand on the city provisions. He explained:

"I do not agree that there is anything in [the] substance of Goal 17 or IR 6 that requires that the county adopt and apply comprehensive plan and land use regulation provisions governing road vacations in coastal shorelands that are located *outside* the county's municipal jurisdiction and *inside* the City of Yachats. For that reason, I do not think the county is required in this case to apply Goal 17 or IR 6 to its decision to vacate a right-of-way that is located entirely within the City of Yachats.

"ORS 368.361(3) gives the county 'jurisdiction' to vacate county roads that are located in the City of Yachats. However, I believe that statute simply places the county into the shoes of the city as the decision maker—giving the county jurisdiction or authority to vacate such roads that it would otherwise lack due to ORS 368.326. I see nothing in ORS 368.361(3) that has any bearing on whether the county must adopt comprehensive plan or land use regulation provisions to implement Goal 17 and IR 6 with regard to rights of way located inside cities.

"* * * * *

"I believe it is the city's acknowledged plan and land use regulation provisions implementing Goal 17 and IR 6 that apply in this case.

"My conclusion that YCP Policy C.6 and YZO 3.100 apply to the challenged decision means I agree with the majority that the challenged decision is a land use decision, although I would base our jurisdiction on the applicability of YCP Policy C.6 and YZO 3.100 rather than Goal 17 and IR 6.

"\* \* \* \* \*

"Finally, I believe those findings are insufficient to demonstrate compliance with YCP Policy C.6 and YZO 3.100, for the same reasons the majority concludes the challenged decision fails to demonstrate compliance with the identical substantive requirements imposed by Goal 17, IR 6." (Footnotes omitted; emphasis in original.)

In their arguments to us, both the county and the individual petitioners contend that LUBA erred by holding that IR 6 applies to the county's decision. For largely the same reasons stated in the LUBA concurrence, we agree that IR 6 is not applicable. ORS 197.646 requires the direct application of a new goal or rule to a local government's land use decisions if the local government has not amended its plan and regulations to implement the new goal or rule. Here, however, the city has enacted local legislation that implements Goal 17 and IR 6 with respect to the land in question, and we conclude that the *county* is required to apply that *city* legislation to this decision. As the LUBA majority recognized, that requirement inheres in the combination of ORS 368.361(3) (under which the county is given "jurisdiction" to make a decision concerning land that is entirely within the city) and Goal 2 (under which pertinent land use actions by all governmental bodies "must be consistent with the comprehensive plans of cities and counties[.]" The county's decision concerning the use of land that is wholly within the city must apply and be consistent with the city's plan and implementing legislation that regulate the use of that land.

ORS 197.646 creates an exception to the general rule that the statewide goals do not apply directly to the land use decisions of local governments whose land use legislation has

been acknowledged by LCDC. *See Friends of Neabeack Hill v. City of Philomath*, 139 Or App 39, 911 P2d 350, *rev den* 323 Or 136 (1996). There is no colorable doubt that the city's legislation is acknowledged, that *it* does *not* come within the ORS 197.646 exception to the rule, and that it is applicable to the county's decision in this case. We decline to hold that ORS 197.646 makes Goal 17 or IR 6 applicable here, simply because the county is the decisionmaker and has not *also* adopted its own implementing legislation with respect to this land which lies entirely within the territorial *planning* jurisdiction of a body other than itself. To hold otherwise would effectively make the city's acknowledged legislation inapplicable to its own territory, because the county has not also adopted legislation that applies to the city territory but, due to a historical accident, happens to be the decisionmaker. We accordingly conclude that the county and petitioners are correct in contending that LUBA erred by remanding the county's decision on the basis of IR 6.[4]

■■ Petitioners make three additional assignments. Two of those mistakenly rely on the fact that the county made certain findings, which are contrary to the legal conclusions that respondents espoused and LUBA resolved, and which are supported by substantial evidence. However, the decisive issue is whether the findings demonstrate compliance with the applicable legal standards, not whether there is evidence to support them. Petitioners' remaining assignment is to the effect that LUBA failed to reach the question of whether the county's decision had a substantial impact on present or future land uses. The apparent thrust of the argument is that the decision did not have a substantial impact and, without more, it was therefore not a land use decision over which LUBA had jurisdiction. If petitioners' understanding is that a decision that meets the statutory definition of a "land use decision" must *also* pass the "significant impact test" in order to come within LUBA's jurisdiction, then they are mistaken. *See Oregonians in Action v. LCDC*, 103 Or App 35, 38, 795

---

[1] Because the city plan and ordinance provisions are applicable to the decision, it follows that the county's action was a "land use decision" under ORS 197.015(10)(a) and the county and petitioners are not correct in contending that LUBA lacked jurisdiction, although they are right in arguing that LUBA erred by holding that IR 6 was applicable and was violated.

P2d 1098 (1990), and authorities there cited. We have held that the county's decision met the statutory test. Without more, it was a "land use decision," and LUBA had jurisdiction.

Respondents' principal arguments in their cross-petition are directed against LUBA's adverse rulings on the issues concerning the consistency of the vacation decision with the city planning and zoning ordinance provisions. LUBA's principal basis for rejecting respondents' contentions to it on those issues—at least as to policy 6 and YZO 3.090— was that the south part of County Road 804 did not appear to be contemplated by the separate plan inventory provision that respondents cited to LUBA. However, respondents argue to us that policy 6 "itself contains no reference to County Road 804, whether north or south, or the inventory * * * and should not be limited to one or the other." We agree with respondents. Furthermore, at least in the absence of greater explanation, we are unable to agree with the LUBA majority's cryptic indication that policy 6 can be understood as placing any lesser or different restriction on the decision to vacate the road than would IR 6, the state provision that the local policy materially duplicates.

Respondents make a number of other arguments concerning LUBA's disposition of the issues that turn on the city plan and ordinance provisions. Given our conclusion that LUBA has misconstrued the focal city provision in ways that may affect its interpretation and application of the others, and given the fact-bound nature of some of respondents' arguments that implicate the city provisions, we consider the appropriate disposition of the cross-petition to be a remand to LUBA to reconsider its interpretations and applications of policy 6, YZO 3.090 and YZO 3.100 generally. *See Recovery House VI v. City of Eugene*, 150 Or App 382, 946 P2d 342 (1997). Further, present comment by us on respondents' arguments regarding the city provisions would not advance matters.

In the interest of making it clear what we are *not* remanding, we note that we have considered and reject without separate discussion respondents' arguments relating to

ORS 368.331 and to policies E.3 and E.5 of the city's comprehensive plan.

Reversed on petition; on cross-petition, reversed and remanded for further consideration not inconsistent with this opinion.