Argued and submitted August 16, affirmed November 22, 2000

JACKSON COUNTY CITIZENS' LEAGUE,
*Petitioner,*

*v.*

JACKSON COUNTY;
Rogue Valley Manor;
Naumes, Inc.,
and Evelyn Nye,
*Respondents.*

(99-139; CA A110537)

15 P3d 42

F. Blair Batson argued the cause and filed the brief for petitioner.

Steven R. Rinkle waived appearance for respondent Jackson County.

E. Michael Connors argued the cause for respondents Rogue Valley Manor, Naumes, Inc., and Evelyn Nye. With him on the brief was Gregory S. Hathaway.

Before Linder, Presiding Judge, and Landau and Wollheim, Judges.

LINDER, P. J.

## LINDER, P. J.

■ Petitioner and two other parties appealed to LUBA from Jackson County's 1996 approval of the private respondents' (respondents) application to expand a golf course located within the Medford urban growth boundary (UGB) onto contiguous land that lies, in part, on rural land that is outside the UGB and that is zoned for exclusive farm use (EFU). Golf courses are a conditionally permissible use in EFU zones under ORS 215.283(2)(e).[1] LUBA nevertheless agreed with petitioners' arguments that the proposed expansion of the golf course was precluded by certain rules of the Land Conservation and Development Commission (LCDC) pertaining to golf courses on agricultural lands. *DLCD v. Jackson County*, 33 Or LUBA 302 (1997) (*Jackson County I*). Respondents sought our review. We reversed LUBA's decision as to the effect of the agricultural lands rules, but we remanded the case to LUBA to consider other issues raised by petitioners that LUBA found unnecessary to reach. *DLCD v. Jackson County*, 151 Or App 210, 948 P2d 731 (1997) (*Jackson County II*).

On remand, LUBA addressed, *inter alia*, petitioners' contentions that the expansion of the golf course from the urban location to the rural one was inconsistent with statewide planning Goal 14 (relating to urbanization). Specifically, petitioners maintained that the county's decision had to comply with the goal or an exception to the goal had to be taken. No exception was taken, and the decision did not satisfy the goal, according to petitioners, because it authorized an urban use on rural land outside the UGB.

---

[1] ORS 215.283(2) provides, in part:

"The following nonfarm use may be established, subject to the approval of the governing body or its designee in any area zoned for exclusive farm use subject to ORS 215.296:

"*    *    *    *    *

"(e) Golf courses."

ORS 215.213(2)(f) contains a corresponding provision applicable to counties that have adopted marginal lands provisions under ORS 197.247. Although ORS 215.283 is the applicable statute here, some of the authorities we will discuss relate directly to ORS 215.213. Those authorities are nevertheless fully germane to the issues under ORS 215.283 that arise here.

LUBA first concluded:

"[P]etitioners fail to establish why Goal 14 applies to this permit decision. Absent circumstances not present here, the statewide planning goals are not generally applicable to decisions applying acknowledged comprehensive plan provisions and land use regulations. ORS 197.646; 197.835(5); *Byrd v. Stringer*, 295 Or 311, 316-17, 666 P2d 1332 (1983). Petitioner DLCD suggests that because it raised below the possible applicability of Goal 14, the county was obligated to make findings demonstrating that the proposed use is rural, or take an exception to Goal 14. However, as intervenors point out, this Board has held that uses allowed by statute in EFU zones are not subject to the additional requirement that the use be rural or that an exception to Goal 14 be taken. *Washington Co. Farm Bureau v. Washington Co.*, 17 Or LUBA 861, 878 (1989). Thus, absent some explanation for why Goal 14 is applicable or could be applicable to the challenged conditional use permit application, the mere fact that a party raised the issue of compliance with Goal 14 below does not obligate the county to make findings regarding Goal 14."

*DLCD v. Jackson County*, 36 Or LUBA 88, 97-98 (*Jackson County III*). However, notwithstanding its holding that Goal 14 was not *directly* applicable to the decision, LUBA concluded that a remand to the county was necessary to determine whether the proposed expansion was consistent with certain county comprehensive plan urbanization policies that implement the statewide goal.

The county rendered a decision on remand that can be summarily described as holding that the allowance of this use was consistent with the plan policies. Consequently, the county again approved the application. Petitioner then brought the present appeal to LUBA (*Jackson County IV*).[2] Petitioner contended, *inter alia*, that the county's interpretation of its own plan policies as allowing the expansion was contrary to Goal 14, and, therefore, was reversible under ORS 197.829(1)(d). That statute provides, in part, that LUBA

---

[2] The parties that had joined petitioner in the previous appeal did not do so this time.

"shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless [LUBA] determines that the local government's interpretation:

"* * * * *

"(d)   Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

Relying on *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992), respondents argued to LUBA that petitioner had "waived" the argument, because it did not seek our review of LUBA's decision in *Jackson County III*, and, specifically, did not seek to overturn the part of LUBA's *Jackson County III* analysis in which it relied on its earlier decision in *Washington Co. Farm Bureau v. Washington Co.*, 17 Or LUBA 861 (1989).

LUBA rejected the waiver argument[3] and reached the merits of petitioner's ORS 197.829(1)(d) contention. After addressing each of the specifics of the contention, LUBA ultimately relied in *Jackson County IV* on the *Washington Co. Farm Bureau* decision that had served as one of the bases for its holding in *Jackson County III*. LUBA explained in the present case:

"We adhere to our conclusion in *Washington Co. Farm Bureau* that Goal 14 [itself] does not require that counties determine on a case-by-case basis whether applications for uses that are authorized by [ORS 215.213 or ORS 215.283] on EFU-zoned lands must nevertheless be denied, if they can be characterized as 'urban.'

"* * * * *

"It is clear from the county's decision on remand that it interprets its Urbanization Policies to impose no more of an obligation on the disputed golf course expansion onto EFU-zoned lands than the obligation that would be imposed by Goal 14 if the goal applied directly. That interpretation may not be rejected under ORS 197.829(1)(d). We have already concluded that Goal 14 does not require that the county

---

[3] LUBA also rejected a second and separate waiver argument advanced by respondents. Respondents cross-assign error to LUBA's rulings on both arguments. We will discuss the first below. The second does not require discussion.

determine whether an application for a permit to develop a use that is authorized on EFU-zoned land qualifies as 'urban development.' Therefore a [further] remand for the county to make that same determination under its Urbanization Policies here would serve no purpose."

Having rejected petitioner's argument by concluding that neither Goal 14 nor the county's own urbanization policies made the urban or rural nature of the golf course expansion relevant to its permissibility in the EFU zone, LUBA affirmed the county's decision.[4] Petitioner seeks our review.

■ At the outset, respondents renew their "waiver" argument and assert that petitioner's failure to seek review in *Jackson County III* precludes it from raising the issue here that it could have raised in a review of that decision. Specifically, respondents contend that petitioner was obliged to take the earlier occasion to challenge LUBA's statement in *Jackson County III* that, as it had held in *Washington Co. Farm Bureau*, "uses allowed by statute in EFU zones are not subject to the additional requirement that the use be rural or that an exception to Goal 14 be taken."

LUBA rejected the argument on the ground that its *holding* in *Jackson County III* was based on the principle that the statewide goals do not apply directly to the land use decisions of local bodies with acknowledged land use legislation. The language that respondents cite from its *Jackson County III* opinion, according to LUBA, was *dictum*, and this court's review of it could not have been obtained on the earlier occasion for that reason. Respondents answer that petitioner's contention and LUBA's dispositive reasoning in *Jackson County IV* were identical in substance to the issue addressed by the "*dictum*" in *Jackson County III*, and that it should not be material to the reviewability question whether that reasoning flows from the direct applicability of Goal 14 or from its "indirect" applicability via ORS 197.829(1)(d). Respondents note further that LUBA's contrary view is inconsistent with *Beck* and the underlying statutory policy of resolving land use controversies expeditiously. *See* ORS 197.805.

---

[1] There was one other issue before LUBA, which it decided adversely to petitioner, and which is not presented here.

**3.** Respondents' frustration over the inefficiency involved in the review process in this particular case is, perhaps, understandable. Nevertheless, LUBA's rejection of respondents' "waiver" argument was correct. In *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), the Supreme Court synthesized a rule of deference by LUBA and the courts in reviewing local interpretations of local land use legislation. ORS 197.829(1)(d) was enacted to modify *Clark* in part and thereby prevent its deferential review principle from enabling local interpretations of local law to effectively abrogate the statewide goals and other provisions of state law. *See Friends of Neabeack Hill v. City of Philomath*, 139 Or App 39, 45-46, 911 P2d 350, *rev den* 323 Or 136 (1996), and authorities there cited. Nevertheless, ORS 197.829(1)(d) does not displace the general principle that the goals do not apply directly to the post-acknowledgment land use decisions of local governments. *Id.* At the same time, that general principle—before the enunciation of *Clark* and the adoption of ORS 197.829(1)(d) as well as after—is subject to some exceptions. *See, e.g.*, ORS 197.835(6) (a land use decision that amends an acknowledged comprehensive plan is directly reviewable for goal compliance).

■ The upshot is that, in the local and review proceedings on a single application, an opponent can assert both that the goals are directly applicable and preclude approval, *and* that local regulations instead of the goals are applicable but the former must be interpreted as precluding approval in order to avoid the inconsistency with the goals that ORS 197.829(1)(d) proscribes. Because the two assertions are essentially structural alternatives to one another, it is unlikely that both can be dispositively correct in a particular case. A full review of the merits will often be necessary before a decision can be reached as to which, if either, *is* correct. Further, because of their alternative nature, it may sometimes happen that the two assertions will not reach the point of disposition until *seriatim* proceedings and appeals are conducted in connection with the same application.

In *Friends of Neabeack Hill*, we defined certain limits on the use of the arguably circular process described above. *See id.*, 139 Or App at 46 (LUBA may not entertain arguments concerning compliance of acknowledged local

land use legislation with the statewide goals in reviewing particular land use decisions made pursuant to the local legislation). This case, however, does not appear to come within those limits. Rather, it presents a paradigm model of a first appeal that turns on an inapposite goal consistency argument, a resulting remand to apply local provisions instead of the goal, and a second appeal that raises the legislatively declared separate question of whether the ensuing local interpretation of the local provisions is contrary to the goal that was the subject of the argument in the first appeal.

Obviously, a potential for duplication, redundancy, and delay is inherent in the present statutory scheme. We might therefore agree with respondents that some kind of "waiver" principle should apply, if it could be said that a party has inappropriately kept a second issue in reserve for a second appeal to LUBA, when the second issue was plainly cognizable at the time of the first appeal. *See Beck*, 313 Or at 153 n 2; *Mill Creek Glen Protection Assoc. v. Umatilla Co.*, 88 Or App 522, 526-27, 746 P2d 728 (1987). Here, however, it could not have been known—in theory at least—until after the county's decision following the remand in *Jackson County III* that its interpretation of its own plan policies would give rise to precisely the same question under ORS 197.829(1)(d) that LUBA had already answered in its analysis of the "direct" Goal 14 question in *Jackson County III*. While we surely do not imply that petitioner could not or should not have foreseen the possible redundancy, we cannot say that the redundancy was inevitable before the fact.

Respondents maintain that petitioner's "tactic" in pursuing the *seriatim* LUBA appeals and local remand proceedings was "to prolong the final resolution of this matter and delay Respondents' project." If that is so, however, the "tactic" is one that ORS 197.829(1)(d) facilitates. The solution, if any, lies with the legislature. Petitioner's contention that the county's decision applies the plan urbanization policies in a manner that is contrary to Goal 14 and is therefore reversible under ORS 197.829(1)(d) is reviewable under the law as it stands.

■■ The decisive question on the merits is one that this court has not previously addressed and that LUBA answered

in the negative in *Washington Co. Farm Bureau*: Is a separate showing of compliance with or an exception to Goal 14 required in order to allow uses on EFU land that are urban in nature but are of the kinds specifically permitted in EFU zones by ORS 215.213 or ORS 215.283?

In *1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 724 P2d 268 (1986) (*Curry County*), the Supreme Court held that a conversion of rural land to urban uses outside an established UGB is contrary to Goal 14, unless it is accompanied by a showing of compliance with the goal (apparently by amending the UGB to include the affected land) or by justifying an exception to Goal 14. The court held that the requirement was not necessarily excused by the fact that an exception to Goals 3 or 4 had been taken for the same land to allow nonagricultural or nonforest uses on it. The court explained that "commitment to non-resource use does not necessarily establish commitment to 'urban uses,'" and that:

> "By themselves, the county's exceptions to Goals 3 and 4 could neither define all restrictions upon uses of lands in the exceptions areas nor authorize particular uses of these lands. Those exceptions could suffice as exceptions to Goal 14 *only* if the showing that farm and forest uses were impracticable also established whatever is necessary to show that uses which Goal 14 allows outside UGBs were impracticable."

*Curry County*, 301 Or at 487 (emphasis in original).

In *Washington Co. Farm Bureau*, LUBA considered whether the county's proposed intensification of the use of a street in an EFU zone from "rural" to "arterial" status was subject to Goal 14, under the *Curry County* rationale.[5] LUBA held that the answer was no, explaining:

> "[A]lthough we agree with petitioners that an exception to Goal 14 or an explanation for why Goal 14 does not apply would ordinarily be required, our decision that the proposed use is specifically allowed under Goal 3 and ORS 215.213(1) and (2) requires a different result in this case.

---

[5] LUBA apparently assumed without deciding in *Washington Co. Farm Bureau* that the proposed use was urban in nature. We make the same assumption here as to the proposed golf course expansion.

"The statutory EFU zone provisions, read together with Goal 3, explicitly allow on EFU zoned land a variety of uses that are not farm uses. In addition to the roadway improvements discussed supra, such uses as public and private schools, churches, utility facilities, solid waste disposal sites, community centers, playgrounds, campgrounds, golf courses, commercial power generating facilities, and destination resorts are allowed by ORS 215.213 or 215.283, either outright or subject to reasonable county imposed conditions. While it is possible that the legislature intended to allow the listed uses only if such uses are also rural in scale or appropriately limited to serve the immediate rural area, we are cited nothing and find nothing in the statutory scheme or language to suggest that the legislature intended EFU zone uses to be so limited. Specifically, we find no such limiting language in the statutory provisions allowing reconstruction or modification of public roads and highways or other uses that clearly may serve an urban clientele, in whole or in part. As we explained in *Hammack & Associates, Inc. v. Washington County*, 16 Or LUBA [75, 82, *aff'd* 89 Or App 40 (1987)]:

> " 'We find that [uses allowed in ORS 215.213] can and do generate impacts that are urban in nature and may require services and facilities that are urban in nature. The fact that they are allowed in an EFU zone does not mean they are rural. It simply means the legislature apparently made a policy decision, these uses may be a permissible use of rural EFU lands.'

"The plan amendment allows only a use that is specifically allowed by ORS 215.213(1) and (2). We conclude the legislature intended to allow counties to permit the uses it specified in ORS 215.213(1) and (2) without the additional requirement, unexpressed in the language of the statute, that the use be rural or an exception to Goal 14 be taken."

17 Or LUBA at 877-78 (footnote omitted; brackets in original).

We agree with LUBA's conclusion in *Washington Co. Farm Bureau* that compliance with or an exception to Goal 14 is unnecessary to allow those urban-level uses in EFU zones that are specifically authorized or permissible under ORS 215.213 or ORS 215.283.[6] There are three reasons for our

---

[6] We note that the holding in *Washington Co. Farm Bureau*, as expressed in that opinion itself and as described in *Jackson County III* and *Jackson County IV*,

agreement. The first closely tracks LUBA's analysis: Where the urban use in question is specifically permitted by statute on EFU land, it is also implicitly permitted by statute on rural land—of which EFU land is virtually always a subspecies in theory and in fact.

Second, contrary to petitioner's apparent understanding, we do not read *Curry County* as establishing a categorical and immutable rule that there must be a separate Goal 14 exception for urban uses on rural land even when an exception to or demonstration of compliance with Goal 3 or another resource goal has already been made to authorize or justify precisely the same nonresource *and* urban use in a rural resource zone. In the passage quoted earlier from *Curry County*, 301 Or at 487, the court indicated that, in such situations, the exception to the resource goal alone *could* suffice. The situation here is analogous. ORS 215.213(1) and (2) and ORS 215.283(1) and (2) allow specific nonfarm uses in rural EFU zones, and some of those uses are inherently urban in nature. An exception to Goal 14 to allow precisely the same urban use on precisely the same rural land that the statutes explicitly authorize would come within the principle recognized in *Curry County* that a totally redundant exception to or showing of compliance with Goal 14 is unnecessary.

Finally, the statutory context also lends support to our conclusion. ORS 215.296(1) provides, with respect to uses like the one involved in this case:

"(1)   A use allowed under ORS 215.213(2) or 215.283(2) may be approved only where the local governing body or its designee finds that the use will not:

"(a)   Force a significant change in accepted farm or forest practices on surrounding lands devoted to farm or forest use; or

---

has been phrased in various ways by LUBA. Some of the descriptions seem to indicate that the case stands for the broad principle that Goal 14 is inapplicable in EFU zones, or is not a factor to be considered in connection with urban uses of any kind on EFU land. We emphasize that the only question *we* address—and to which our *present* agreement with *Washington Co. Farm Bureau* is limited—is whether Goal 14 applies in connection with the approval of particular urban-level uses that are of the kinds that the cited statutes allow in EFU zones.

"(b) Significantly increase the cost of accepted farm or forest practices on surrounding lands devoted to farm or forest use."

However, ORS 215.296(9)(a) provides, as relevant:

"The standards set forth in subsection (1) of this section shall not apply to farm or forest uses conducted within:

"* * * * *

"(B) An exception area approved under ORS 197.732; or

"(C) An acknowledged urban growth boundary."

Hence, the approval standards that ORS 215.296(1) establishes for golf courses and other uses that are conditionally permitted under ORS 215.213(2) and ORS 215.283(2) are excused if the resource use is conducted within an exception area or an acknowledged urban growth boundary. It would not have been necessary (or sensible) for the legislature to enact those provisions as part of ORS 215.296 if the golf courses and other uses authorized by ORS 215.213(2) and ORS 215.283(2) were subject to a requirement of compliance with or an exception to Goal 14 independently of ORS 215.296. *See also* ORS 215.213(10); ORS 215.283(3).

Petitioner argues further, however, that to whatever extent LUBA's conclusion in *Washington Co. Farm Bureau* might ever have been deemed correct, it does not survive *Lane County v. LCDC*, 325 Or 569, 942 P2d 278 (1997). In that case, the Supreme Court sustained the validity of certain LCDC rules that restricted or prohibited some uses on "high value farmland" within EFU zones despite the fact that the uses are permissible in the zones under ORS 215.213 and ORS 215.283. The court reasoned, in essence, that

"a county's power to designate EFU land and its authority to allow nonfarm uses on EFU land pursuant to ORS 215.213 are subordinate to [LCDC's] statewide land use planning goals, including Goal 3 [relating to agriculture]."

*Lane County*, 325 Or at 583. Consequently, the court effectively held that LCDC's rules implementing Goal 3 by regulating uses on high value farmland prevailed over and modified the enumeration of permissible uses in ORS 215.213 itself.

Petitioner contends that Goal 14 stands in the same superior posture to ORS 215.283 here as Goal 3 did to ORS 215.213 in *Lane County*, and that the corresponding conclusion should follow. LUBA made the following response to that contention:

> "Applying [the *Lane County*] reasoning here, we have no doubt that LCDC *could* adopt a statewide planning goal or administrative rule to require that counties not approve an application for a permit to construct an otherwise permissible use in an EFU zone, unless the county finds that the proposed use is not 'urban.' However, that is not the question that is presented in this appeal. The relevant question here is whether *Goal 14* [already] imposes such a requirement."

(Emphasis in original.)

LUBA proceeded to hold that the answer to that question was no. We agree with LUBA.[7] Petitioner seems to view *Lane County* itself as a self-executing judicial modification of ORS 215.213 and ORS 215.283. It is not. It holds that *LCDC* may effectively limit the uses that are permissible under those statutes, at least in certain respects. However, where LCDC has not done so, the statutes remain effective according to their terms. LCDC had done nothing as of the relevant time to restrict the county's authority to expand this golf course on EFU land pursuant to ORS 215.283(2)(e).

We have considered petitioner's other arguments and reject them without discussion.

Affirmed.

---

[7] However, we would replace the words "we have no doubt" in the quotation with the phrase "it is arguable."