Argued and submitted August 16, affirmed September 27, 2000

# DAYTON PRAIRIE WATER ASSOCIATION
## and Timothy Kreder,
### *Petitioners,*

*v.*

## YAMHILL COUNTY,
### City of Dayton,
### and City of Lafayette,
### *Respondents.*

## (LUBA No. 99-123; CA A110515)

11 P3d 671

Steven M. Claussen argued the cause and filed the brief for the petitioners.

Pamela J. Beery argued the cause for respondents City of Dayton and City of Lafayette. With her on the brief was Christopher A. Gilmore.

No appearance for respondent Yamhill County.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioners appealed to LUBA from Yamhill County's decision approving the application of the respondent cities (respondents) to install intake wells and other facilities for a water system in an exclusive farm use (EFU) zone. LUBA concluded that the county had not made adequate findings to support its decision that the reservoir and treatment facility for the project needed to be located on EFU land and remanded that portion of the decision to the county. However, LUBA affirmed the remainder of the county's decision, and petitioners seek our review of that portion of the decision. We affirm.

ORS 215.283(1)(d) allows, as a nonfarm use in EFU zones, "[u]tility facilities necessary for public service."[1] In *McCaw Communications, Inc. v. Marion County*, 96 Or App 552, 556, 773 P2d 779 (1989), we said that,

"for a 'utility facility' to be permitted under [that statute], the applicant must establish and the county must find that it is necessary to situate the facility in the agricultural zone in order for the service to be provided."

Subsequent to our decision in *McCaw Communications*, the Land Conservation and Development Commission (LCDC) adopted an implementing regulation, codified as OAR 660-033-0130(16), that contains the following similar language:

"A facility is necessary if it must be situated in an agricultural zone in order for the service to be provided."

According to LUBA, petitioners contended to it that the siting of the utilities in question in the EFU zone is contrary to ORS 215.283(1)(d) as interpreted in *McCaw Communications* and OAR 660-033-0130(16), because

"there exist four feasible alternatives to placing the facilities on EFU-zoned land. First, petitioners contend that wells drawing water from the Willamette River could provide water without using EFU-zoned land. Second, petitioners contend that more efficient use of existing sources

---

[1] ORS 215.213(1)(d) contains an identical provision. Although ORS 215.283(1)(d) is the applicable statute here, the two statutes and the authorities construing or applying them are interchangeable for purposes of our discussion.

would obviate some or all of the need for the cities to obtain new sources of water. Third, petitioners argue that, as an alternative to drilling wells on EFU-zoned land, the applicants could purchase water from the City of McMinnville. Finally, petitioners argue that the cities could drill their wells on non-EFU-zoned land at the McMinnville Airport." (Footnote omitted.)

LUBA concluded that the statute, as construed in *McCaw Communications* and the LCDC rule, is pertinent only to the question of where a facility should be located once a decision to use a particular type of facility has been made. LUBA explained:

"The ultimate question under these assignments of error is the meaning of ORS 215.213(1)(d) and 214.283(1)(d), because the Court of Appeals' decision in *McCaw Communications, Inc.* is based on the court's interpretation of those statutes and OAR 660-033-0130(16) codifies the court's interpretation of what the statutes require. *Clackamas Co. Svc. Dist. No. 1 v. Clackamas County*, 35 Or LUBA at 380. Petitioners' reading of the statutes would require that all other legitimate public policy concerns that might be weighed in deciding what kind of facility would best respond to an identical utility need must be subjugated to the legislative policy favoring protection of agricultural lands, if it is feasible to do so. For example, if an electrical power utility wished to develop wind-driven turbines on EFU-zoned lands, the utility would first have to demonstrate (1) that energy conservation measures are not a feasible way to address the identified need; (2) that fossil fuel, nuclear, hydro, solar or other alternative ways of generating power on non-EFU lands are not feasible alternatives, and (3) that there are no other non-EFU-zoned sites that could feasibl[y] accommodate the wind-driven turbine. We believe that ORS 215.213(1)(d) and 215.283(1)(d), as interpreted by the Court of Appeals in *McCaw Communications, Inc.* and by LCDC in OAR 660-033-0130(16), impose the third requirement, but do not impose the first two requirements. As we interpret the statutes, the decision about what kind of facility is appropriate to respond to an identified utility need may be guided by a number of public policy concerns that have little or nothing to do with exclusive farm use zoning or the policies that underlie such zoning. However, once the decision is made to construct a particular kind of utility facility to respond to an identified need,

that facility may only be located on EFU-zoned lands if there are no feasible sites for the proposed facility that are not zoned EFU.

"In this case [respondents'] decision to respond to the identified water shortage by drilling wells and constructing related facilities to expand water production and storage capacity, as opposed to responding to that shortage in some other way, is not governed by ORS 215.213(1)(d), 215.283(1)(d), and OAR 660-033-0130(16). However, once the cities make a decision to respond to the identified water need in that way, the proposed facilities must be sited on non-EFU-zoned land, unless there is no feasible non-EFU-zoned site. We therefore reject petitioners' arguments that ORS 215.213(1)(d), 215.283(1)(d), and OAR 660-033-0130(16) require that the county demonstrate that (1) direct use of the Willamette River as a water source (without drilling wells), (2) making improvements or other additions to the existing water system, or (3) purchase of water from the City of McMinnville are not feasible alternatives to drilling new wells as a source of water. Although the cities' and county's decision to respond to the identified water shortage by constructing wells and related facilities rather than by pursuing other options is not governed by ORS 215.213(1)(d), 215.283(1)(d), and OAR 660-033-0130(16), the decision concerning the appropriate site to locate those wells and related facilities is."

■    In their first assignment of error to us, petitioners argue that LUBA construed the statute and interpretive authorities too narrowly, and that, under a proper interpretation, "[i]f [alternative methods] are available to provide the needed public service without placing utility facilities on EFU zoned land, the law precludes [that] use of EFU zoned land." Petitioners assert that LUBA thereby committed error in not requiring the county to consider the feasibility of alternative methods of providing water service that could occur on non-EFU-zoned land.

■    We agree with LUBA's conclusion and, in the main, with its analysis. As we recognized in *McCaw Communications*, the pertinent language of ORS 215.283(1)(d) is not entirely clear. However, as LUBA correctly concluded, relying on our holding in *McCaw Communications*, considering the text and context of the statute, it does not appear that the

legislature intended to subjugate all other legitimate public policies to the legislative policy favoring the protection of agricultural land. Under the pertinent statutory schemes, ORS 215.283(1)(d) applies only to the need for the facility itself, and leaves decisions concerning the methods of providing particular public services to be made by local governments under other appropriate criteria and considerations.[2] We reject the argument in petitioners' first assignment that LUBA misconstrued the statute or, concomitantly, committed any resulting error.[3]

■　　Petitioners' second assignment of error is that LUBA erred in its decision by disregarding the "overriding state agricultural land use policy" of requiring "any nonagricultural land use policy" to be as "non-disruptive of farm use as possible." Petitioners argue that, in considering an application for a utility facility in an EFU zone, a local government must compare alternative EFU-zoned sites for the proposed facility and choose the site that is "least disruptive" to agriculture. Petitioners rely on language in our decision in *McCaw Communications* to support that proposition. However, as LUBA again correctly points out, neither the statute nor the case law imposes such a requirement on local governments.

　　Affirmed.

---

[2] A local government of course *may* consider the preservation of farm land for farm use in the latter connection.

[3] Through Oregon Laws 1999, chapter 816, section 3, the legislature enacted an extensive provision relating to the general subject of utility facilities in agricultural zones. *See* ORS 215.275. The application in this case was filed before that statute took effect.