Argued and submitted March 6, reversed and remanded with instructions
May 23, 2001

Penny COX,
*Respondent,*

*v.*

POLK COUNTY,
*Respondent below,*

*and*

CITY OF DALLAS,
*Petitioner.*

2000-030; A112401

25 P3d 970

Mark Irick argued the cause for petitioner. With him on the brief were David Doyle and Shetterly, Irick, Shetterly & Ozias.

Christopher J. Eggert argued the cause and filed the brief for respondent.

Mark D. Shipman and Saalfeld, Griggs, Gorsuch, Alexander & Emerick, P. C., filed the brief *amicus curiae* for Oregon Farm Bureau Federation.

Gerald P. Linder and William K. Kabeiseman and Preston Gates & Ellis LLP filed the brief *amici curiae* for Association of Clean Water Agencies and League of Oregon Cities.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

The City of Dallas proposed to transport pretreated effluent from a local industrial facility to a holding pond, use the effluent to irrigate and fertilize poplar trees, and, eventually, sell the mature trees. The project was to be located outside the city's urban growth boundary (UGB) and within an exclusive farm use (EFU) zone. The city submitted a Land Use Compatibility Statement (LUCS) relating to the project to the Polk County planning director. In October 1999, the planning director approved the LUCS on the ground that, consistently with a Polk County zoning ordinance and with ORS 215.203 and ORS 321.267(1)(e),[1] the project was permitted outright as a farm use.[2]

---

[1] ORS 215.203 provides, in part:

"(1) Zoning ordinances may be adopted to zone designated areas of land within the county as exclusive farm use zones. Land within such zones shall be used exclusively for farm use except as otherwise provided in ORS 215.213, 215.283 or 215.284. * * *

"(2)(a) As used in this section, 'farm use' means the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting, and selling crops * * * or any other agricultural or horticultural use * * *. * * * 'Farm use' does not include the use of land subject to the provisions of ORS chapter 321 [relating to forest products], except * * * land described in ORS 321.267(1)(e) * * *."

ORS 321.267(1)(e) describes:

"land and hardwood timber, including but not limited to hybrid cottonwood, which are:

"(A) Grown or growing on land which has been prepared by intensive cultivation methods and which is cleared of competing vegetation for at least three years after tree planting;

"(B) Of a species marketable as fiber for inclusion in the 'furnish' for manufacturing paper products;

"(C) Harvested on a rotation cycle within 10 years after planting; and

"(D) Subject to intensive agricultural practices such as fertilization, insect and disease control, cultivation and irrigation."

[2] The county first approved a LUCS relating to the project in 1997. In *Friends of Clean Living v. Polk County*, 36 Or LUBA 544 (1999), LUBA remanded the county's 1997 approval decision to the county on the ground that the county had been required, and had failed, to provide an opportunity for a hearing on the decision. In its order in that case, LUBA expressly declined to decide whether, as the petitioners in that case had asserted, the county erred in determining that the project was a "farm use" and in failing to determine that the project was a "utility facility." *Id.* at 560-61.

An adjacent landowner, Penny Cox, and other residents requested a public hearing. Following the hearing, the Polk County Board of Commissioners issued an order and decision in which it agreed that the proposed use was a "farm use" under ORS 215.203 and ORS 321.267(1)(e) and affirmed the planning director's approval of the LUCS. Specifically, the county determined that using recycled wastewater to irrigate tree plantations was an accepted farming practice. The county also concluded that there were no treatment facilities on the site and that effluent may be used for irrigation on a farm site without the irrigation practice constituting a "utility facility." As pertinent here, the county also determined that the requirement in ORS 215.203(2)(a) that the employment of land for a farm use have as its "primary purpose" the obtaining of a profit did not apply to poplar tree plantations. Finally, the county held that whether the effluent constituted hazardous waste was a matter within the authority of the Oregon Department of Environmental Quality (DEQ) and, therefore, was irrelevant to the county's decision regarding whether the project constituted a farm use.

Cox appealed the county's decision to the Land Use Board of Appeals (LUBA). LUBA held that the proposed project was both a farm use within the meaning of ORS 215.203 and a utility facility within the meaning of ORS 215.283(1)(d) (1997).[3] It further concluded that, because the project was a utility facility, it was subject to the requirement that the county consider whether it is feasible to operate the project on land inside the city's UGB or on non-EFU land outside the UGB. *See* OAR 660-033-0130(16); *Dayton Prairie Water Assn. v. Yamhill Cty.*, 170 Or App 6, 11 P3d 671 (2000); *McCaw Communications, Inc. v. Marion County*, 96 Or App 552, 556, 773 P2d 779 (1989).

As to the status of the project as a farm use, LUBA reasoned that the project involved the cultivation of hardwood timber species marketable as fiber as contemplated in

---

[3] ORS 215.283(1) (1997) provided that uses that "may be established in any area zoned for exclusive farm use" include:

"(d) Utility facilities necessary for public service, except commercial facilities for the purpose of generating power for public use by sale and transmission towers over 200 feet in height."

the final sentence of ORS 215.203(2)(a) and in ORS 321.267(1)(e) and that the project had the "primary purpose of obtaining a profit" as required in ORS 215.203(2)(a) because that requirement relates to the use of the land, not the motivation of the owner or operator. With respect to its conclusion that the project also constituted a utility facility, LUBA reasoned that the city's main wastewater treatment facility met the definitions of "utility facility" in Polk County Zoning Ordinance (PCZO) 110.587 (set out below) and ORS 468B.005; that the project at issue, which involved the application of effluent to trees, constituted "continued treatment" of the effluent, including uptake of nitrogen compounds by the trees and binding of heavy metals with the soil; and that the holding pond and poplar tree plantation therefore properly should be viewed as extensions of the city's wastewater treatment facility. LUBA further reasoned that its conclusion that the project was a utility facility was supported by the 1999 amendments to ORS 215.283(1)(d) (1997), referring to "wetland wastewater treatment systems." LUBA noted that, in *Swenson v. DEQ*, 9 Or LUBA 10, 20-21 (1983), it had held that a land use can be both a farm use and a utility facility and, if so, it must meet the applicable requirements for both. LUBA remanded the case to the county to consider whether the siting of the facility was consistent with statutory requirements.

The city seeks judicial review of LUBA's order.[4] We review the order for substantial evidence and errors of law. ORS 197.850(9); *Marshall v. City of Yachats*, 158 Or App 151, 158, 973 P2d 374, *rev den* 328 Or 594 (1999); *Tigard Sand and Gravel, Inc. v. Clackamas County*, 151 Or App 16, 949 P2d 1225 (1997), *rev den* 327 Or 83 (1998).

■ In its first and second assignments of error, the city contends that LUBA committed procedural error when it failed to grant the city's motion to dismiss Cox's brief before LUBA and when it considered facts in the record that were not cited in any of the parties' briefs. The city contends that, by so doing, LUBA prejudiced its substantial rights by denying it a proper opportunity to respond regarding the relevant

---

[4] The city was an intervenor in the LUBA proceeding.

facts and issues. Cox responds, in essence, that the city's substantial rights were not prejudiced and that, conversely, LUBA's findings were supported by evidence in the record.

■ This court may reverse or remand LUBA's decision if it determines that LUBA's order is unlawful in substance or procedure. However, procedural error shall not be cause for reversal on remand "unless the court shall find that substantial rights of the city were prejudiced thereby." ORS 197.850(9)(a). The city argues that LUBA violated its administrative rules in not dismissing Cox's appeal on the basis that Cox's brief before LUBA did not comply with OAR 661-010-0030(4)(b)(C), requiring a party to include in its brief a summary of the material facts and citations to the record where the alleged facts could be found. The city contends that Cox's brief did not include this necessary information and that LUBA was precluded from considering other parties' briefs and the record to decide if it had sufficient information to conduct its review function.

■ Under OAR 661-010-0030, however, LUBA has discretion to refuse to consider a brief that does not "substantially conform" to that and other requirements in the rule. Here, LUBA exercised its discretion and determined that the brief conformed sufficiently to allow it to adequately review the matter:

> "The city is correct that [Cox's] failure to include citations to the pages in the record supporting her factual allegations has hampered our review of this case. That failure also no doubt made the city's and county's response to the petition for review more difficult. We have not combed the record to locate factual support for all of [Cox's] factual allegations. However, the record citations that are provided in the petition for review and the record citations provided by the city, county and amici permit an adequate understanding of the material facts in this case. We therefore deny the motion to dismiss."

We conclude that LUBA's determination that Cox's brief, considered together with the information in all of the briefs submitted to it, was adequate to conduct its review did not violate its rules.

■■ With respect to the city's second assignment of error, in which it asserts that LUBA committed procedural error by relying on facts from the record that were not cited by any of the parties in their briefs, we reach the same conclusion. ORS 197.835(11)(a) provides that LUBA shall decide all issues presented to it "whenever the findings, order and record are sufficient to allow review." Under ORS 197.835(11)(a) and LUBA's administrative rules, it is not procedural error for LUBA to rely on findings and evidence from the record that are not specifically cited by any of the parties. The city contends that it is "fundamentally unfair" for LUBA to rely on information from the record that is not discussed by the parties. We disagree. The city was given a full and fair opportunity to be heard, including by written submission and oral argument.

In its third assignment of error, the city contends that LUBA erred under ORS 197.835(3) by deciding an issue that was not raised before the county, namely, whether the project constituted *both* a "utility facility" and a farm use. Relatedly, in its fifth assignment of error, the city further asserts that Cox was precluded from raising the utility facility issue, and LUBA was precluded from considering it, because she did not raise it before the county. In response to the city's third assignment of error, Cox responds that the "utility facility" issue was raised in the earlier case relating to this project, *Friends of Clean Living v. Polk County*, 36 Or LUBA 544 (1999), and that it was implicitly raised in those portions of the record of this case in which the project is referred to as a "facility." In regard to the city's fifth assignment, Cox responds that she raised the issue in her arguments before the county "despite County's objections." We have reviewed the record of the proceeding before the county and conclude that, although the "utility facility" issue was not the primary focus of the participants' evidence and arguments in that proceeding, it was sufficiently raised. The city's third and fifth assignments fail.

We turn to the city's fourth assignment of error, in which it asserts that LUBA erred under ORS 197.829[5] by failing to defer to the county's determination that the project

---

[5] ORS 197.829 provides:

was not a utility facility. The city also argues that, under applicable Polk County zoning ordinances, including PCZO 110.587 (defining "utility facility necessary for public service")[6] and PCZO 110.520(B) (pertaining to solid waste),[7] the county correctly determined that the project is not a utility facility. Cox responds that the city and the county failed to object in a timely manner to LUBA's "definitions" of the project. Cox also contends that, when, as here, the project consists of a lagoon, irrigation equipment, and the "tree system," and where it involves treatment of the effluent, LUBA correctly determined, under ORS 215.283(1)(d) (1997), ORS 468B.005, and PCZO 100.587, that the project was a utility facility and properly declined to defer to the county's determination that it was not.

■ The city is, of course, correct that local interpretations of local land use legislation are subject to deference under ORS 197.829 and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). *See Sanchez v. Clatsop County*, 146

---

"(1) The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements.

"(2) If a local government fails to interpret a provision of its comprehensive plan or land use regulations, or if such interpretation is inadequate for review, the board may make its own determination of whether the local government decision is correct."

[6] PCZO 110.587 provides:

"UTILITY FACILITY NECESSARY FOR PUBLIC SERVICE. A major physical component of an enterprise that performs an essential public service, such as a natural gas plant, water supply facility, sewage treatment facility, telephone switching station, electrical substation, or radio, microwave, fiber optic, or television transmission tower. However, this does not include components such as poles, wires, cables, lines or pipes."

[7] PCZO 110.520(B) provides, in part, that solid waste does not include "[m]aterials used for fertilizer or for other productive purpose on land in agricultural operations in the growing and harvesting of crops[.]"

Or App 159, 932 P2d 557 (1997). Here, however, we are unable to conclude that the county, in fact, interpreted and applied PCZO 110.587 or other local ordinance. As previously stated, in its order affirming the county planning director, the county concluded that the project constituted a "farm use" under ORS 215.203(2)(a) and ORS 321.267(1)(e). The county also expressly rejected Cox's argument that the project was a "W.W.T.F." (waste water treatment facility). As to that issue, the county concluded that

"pretreated effluent may be used for irrigation as part of a farm use without that irrigation practice being a utility facility. There are no treatment facilities on the subject site—treatment is undertaken at the industrial producer's internal pretreatment facility. The resultant effluent is like any other irrigation water piped to a site. The question before the Board is not whether that effluent meets EPA's definition of wastewater treatment facility or solid waste (or, for that matter, Oregon law definitions of utility facility, hazardous waste site, or solid waste disposal site). Rather that question is whether the process of applying that effluent meets the definition of farm use under ORS 215.203(2)(a). The Board concludes that it does."

In its explanation, the county neither expressly nor implicitly interpreted or applied any local ordinance. *See Alliance for Responsible Land Use v. Deschutes Cty.*, 149 Or App 259, 266-67, 942 P2d 836 (1997), *rev dismissed as improvidently allowed* 327 Or 555 (1998) (local governing body's interpretation of local legislation need not constitute a "separate express interpretive statement"; reviewing court may determine that the interpretation was "inherent in the way that [the local governing body] applied" the local legislation). Rather, the county purported to consider only whether the project constituted a farm use. To the extent that the county nevertheless addressed the question of whether the project was a utility facility, it referred only to Environmental Protection Act (EPA) requirements and Oregon law—that is, federal and state law. Accordingly, LUBA was not required, under ORS 197.829 or *Clark*, to defer to the county's apparent conclusion that the project was not a utility facility. The city's fourth assignment of error fails.

We turn to the city's sixth, seventh, and eighth assignments of error, in which it challenges, in various

respects, LUBA's legal conclusion that the project was a utility facility under state law. In its sixth assignment of error, the city asserts that LUBA erred in improperly reweighing evidence in the record and by failing to determine that the county's findings relating to features of the project were supported by substantial evidence in the record. *See* ORS 197.835(9)(a)(C) (1997); *see also Younger v. City of Portland*, 305 Or 346, 752 P2d 262 (1988) (discussing LUBA standard of review). In its seventh assignment of error, the city argues that LUBA erred in applying or otherwise being guided by the 1999 amendment to ORS 215.283(1)(d), referring to "wetland wastewater treatment systems." In its eighth assignment of error, the city contends that LUBA erred in concluding that the project was required to meet the approval criteria for both a farm use under ORS 215.203(2)(a) and a "utility facility necessary for public service" under ORS 215.283(1)(d) (1997). According to the city, an activity must be classified as "one use or another"; where the project is a farm use, that use is an outright permitted use that, in effect, trumps any requirements under other classifications. The city also contends that, in any event, the project here is not a utility facility as that term is used in ORS 215.283(1)(d) (1997).[8]

We first dispose of the city's seventh assignment, in which it contends that LUBA erred in relying on the 1999 amendment to ORS 215.283(1)(d) (1997), referring to "wetland wastewater treatments systems." It does not appear that LUBA regarded the amendment as more than guidance or that its consideration of the amendment was critical to its conclusion. In any event, in our analysis of this legal question, we do not consider the 1999 amendment. The application for this project was filed in June 1997. Under ORS 227.178(1), the approval or denial of a land use application is to be based on the standards and criteria in effect at the time that the application was first submitted. We therefore reject this assignment of error.

---

[8] *Amici* League of Oregon Cities and Association of Clean Water Agencies make similar arguments.

We turn to the city's sixth assignment, relating to LUBA's purported reweighing of evidence. Again, as quoted above, the county found, in part:

"There are no treatment facilities on the subject site—treatment is undertaken at the industrial producer's internal pretreatment facility. The resultant effluent is like any other irrigation water piped to a site."

Although LUBA agreed with the county's legal conclusion that the project constituted a farm use,[9] it also concluded that it was a utility facility. In reaching that conclusion, LUBA found as fact that the application of the effluent to the trees constituted "continued treatment" of the effluent, including uptake of nitrogen compounds by the trees and binding of heavy metals with the soil. Because we conclude below that, as a matter of law, the proposed project is not a utility facility, it is unnecessary to address whether LUBA exceeded its proper scope of review in deciding that the proposed activity did constitute treatment.

In its eighth assignment, the city asserts that LUBA erred in determining that a project can constitute *both* a utility facility and a farm use. However, we need not reach that question if, as a matter of law, this project was not a utility facility within the meaning of that statutory term. We therefore first consider that question. It presents an issue of statutory construction to which we apply the familiar methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), beginning with the text and context of ORS 215.283(1)(d) (1997).

■ Neither that provision nor any other statute in effect during the relevant time period included a definition of the statutory phrase "utility facility." The term "utility" commonly means "a service provided by a public utility" and "a unit composed of one or more pieces of equipment [usually] connected to or part of a structure and designed to provide a service (as heat, light, power, water, or sewage disposal)."

---

[9] *Amicus* Oregon Farm Bureau Federation contends that the proposed project is not a farm use under ORS 215.203. However, the parties to this case do not assign error to LUBA's conclusion that the project is a farm use. Accordingly, we do not address that question.

*Webster's Third New Int'l Dictionary*, 2525 (unabridged ed 1993). *See also Black's Law Dictionary*, 1544 (7th ed 1999) (defining "utility" in part as "a business enterprise that performs essential public service" and defining "public utility" as "a company that provides necessary services to the public, such as telephones, electricity, and water"). *Cf.* ORS 366.332 (as used in ORS 366.332 and ORS 366.333, relating to acquisition of utility real property, "utility" means any public or private corporation that "owns, operates, manages or controls all or part of any plant or equipment * * * used, directly or indirectly[,]" for the conveyance of telegraph or telephone messages, for the transportation of water, gas or petroleum products by pipelines, for the production, transmission, delivery or furnishing of heat, light, water, power, electricity, or electrical impulses, or for transmission and delivery of television pictures and sound by cables); ORS 757.005 (as used in ORS chapter 757, relating to utility regulation, "public utility" means a corporation that "owns, operates, manages or controls all or a part of any plant or equipment in this state for the production, transmission, delivery or furnishing of heat, light, water or power," including water utilities that provide "wastewater services"); ORS 758.400(3) (for the purpose of ORS 758.015 and ORS 758.400 to ORS 758.475, "utility service" means services provided by "any equipment, plant or facility" for the distribution of electricity or gas). "Equipment" commonly means "the implements (as machinery or tools) used in an operation or activity : APPARATUS." *Webster's Third New Int'l Dictionary* at 768. As pertinent in this context, the plain meaning of the noun "facility" is "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." *Id.* at 812-13.

Based on those plain meanings and statutory usages, we understand the phrase "utility facility," as used in ORS 215.283(1)(d) (1997), to mean equipment or apparatus, whether standing alone or as part of a structure, that functions to perform or provide, in whole or in part, a service such as the production, transmission, delivery or furnishing of electricity or natural gas, the purification of drinking water,

or the treatment of solid or liquid waste. The equipment comprising the facility need not be extensive or complex; in addition, the facility may include ancillary or off-site equipment such as transmission lines. *See, e.g.*, ORS 215.283(1)(L) (referring to the "placement of utility facilities overhead and in the subsurface of public roads and highways"). However, at a minimum, the facility must include some equipment or apparatus that itself performs the relevant production, transmission or similar function or service. *Cf.* ORS 456.559(2) (Housing and Community Services Department shall not "own, acquire, construct, purchase, lease, operate or maintain utility facilities, including facilities for the generation of electricity, for the distribution of gas [or] electricity, [or] for the conveyance of telephone or telegraph messages"); ORS 757.273 (the Public Utility Commission is authorized to regulate the rates, terms, and conditions for "attachments * * * to poles or other facilities of public utilities and telecommunications utilities"); ORS 757.516 (referring to the "point of [physical] interconnection between the facility of the natural gas utility and the facility of an interstate pipeline").

 Based on the above understanding of the legislature's intended meaning of the phrase "utility facility," we conclude that the project at issue in this case is not a utility facility. In particular, to the extent that the project includes "equipment"—including the irrigation equipment that will be used to apply the effluent to the trees and, perhaps, the manmade holding pond—that equipment does not itself perform the function at issue, namely, treatment of the effluent. Rather, "treatment" of the effluent on the project site, if any, occurs as a result of uptake of components of the effluent by the poplar trees and/or binding of other components with the soil. Thus, even assuming that LUBA was correct that those processes constitute "treatment" of the effluent, the treatment is not accomplished by the installed equipment or apparatus.[10] Stated another way, a project or site in which the equipment or apparatus that is present does not itself perform the critical function or functions that constitute the "service" at issue,

---

[10] In that respect, it would be difficult to distinguish the processes from other naturally occurring processes, such as decomposition of organic matter or evaporation of water.

and in which, conversely, the significant processes are naturally occurring ones, is not a utility facility within the meaning of ORS 215.283(1)(d) (1997). Accordingly, LUBA erred in determining that, because nitrogen in the effluent is taken up by the trees and because other elements in the effluent bind with the soil, the project in this case constitutes a utility facility—specifically, a wastewater treatment facility.

In summary, we conclude that the project at issue is not a utility facility within the meaning of the provisions of ORS 215.283(1)(d) (1997) at the time of the application for this project[11] and that LUBA erred in holding otherwise. Because we so conclude, we need not consider whether LUBA erred in determining that a project can constitute two uses and in determining that such a project must meet the requirements for each.

Reversed and remanded with instructions to affirm county's decision.

---

[11] Again, we do not decide here what, if any, effect the 1999 amendments might have on this conclusion.