Argued and submitted June 4, affirmed August 8, 2001

Joe KEICHER,
*Petitioner,*

*v.*

CLACKAMAS COUNTY
and Clackamas County Fire District No. 1,
*Respondents.*

2000-157; A113942

29 P3d 1155

Edward Sullivan argued the cause for petitioner. With him on the brief were William K. Kabeiseman and Preston Gates & Ellis LLP.

Clark I. Balfour argued the cause for respondent Clackamas County Fire District No. 1.

Michael E. Judd, Assistant County Counsel, waived appearance for respondent Clackamas County.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Petitioner seeks review of a Land Use Board of Appeals (LUBA) decision affirming Clackamas County's approval of the placement of a fire station on land zoned for exclusive farm use (EFU). We affirm LUBA's decision.

We take the relevant facts from LUBA's opinion and the Clackamas County hearings officer's final order. The proposed fire station would serve the Clackamas County Fire District No. 1, a rural fire protection district organized under ORS chapter 478. The district provides fire protection and emergency medical services both to areas outside the Metropolitan Service District Urban Growth Boundary (Metro UGB) and to areas inside the UGB. Most fire district territory is outside the UGB, but the district does include some land inside the UGB and outside cities. In addition to serving areas outside the UGB, the district has agreements with certain cities, including Oregon City, to provide fire and emergency medical services inside city limits. The proposed station would replace a station near Beavercreek located on non-EFU zoned land. The new station would be built on a leased five-acre portion of a 71-acre site over two miles outside the UGB.

The proposed station's placement on EFU land and its plan to provide services to urban areas, as well as rural areas, resulted in a petition to LUBA. The principal question before LUBA, and before us now, is whether the proposed station is a permissible use under ORS 215.283(1), which lists uses that may be allowed within EFU zones. The fire station, if permitted at all, must fall under either ORS 215.283(1)(d) or (w). ORS 215.283 provides, in part:

"(1)    The following uses may be established in any area zoned for exclusive farm use:

"* * * * *

"(d)    Utility facilities necessary for public service * * *.

"* * * * *

"(w)    Fire service facilities providing rural fire protection services."

LUBA understood the parties to agree that a fire service facility provides "rural fire protection services" if it provides the services to rural rather than urban areas.[1] LUBA understood petitioner to assert the statute should be interpreted to permit a fire station on EFU-zoned property.if the station serves exclusively rural areas. LUBA disagreed and concluded that the proposed station's plan to provide service primarily to rural areas was sufficient to satisfy ORS 215.283(1)(w).

■     In its opinion, LUBA acknowledged that a number of our decisions considering statutory authorizations for non-farm uses in EFU zones construe the provisions narrowly in favor of preserving farm land for farm uses. We based our construction on the legislative policy against converting agricultural land to nonfarm use in ORS 215.243. *See Warburton v. Harney County*, 174 Or App 322, 25 P3d 978 (2001); *Nelson v. Benton County*, 115 Or App 453, 459, 839 P2d 233 (1992). LUBA did not appear to disagree with the policy but also believed it appropriate to include within the relevant context of ORS 215.283(1)(w) statutes governing the formation and operation of rural fire protection districts.[2] Under ORS chapter 478, rural fire protection district territorial limits do not include areas within cities, but districts are permitted to provide fire services within cities under intergovernmental agreement. ORS 478.010(2)(a); ORS 478.300(1). From this statutory framework, and assertions of the parties and *amici* below, LUBA understood that rural fire protection districts can and do provide services to cities. LUBA then concluded

---

[1] Because of this agreement of the parties, LUBA did not consider what it found to be an undeveloped argument that the area to be served, whether rural or urban, is not the only way to determine whether a station provides "rural fire protection services." We take LUBA's comment to mean it did not consider whether there is a level of fire service that, by its relative intensity, could be labeled rural or urban. Determining whether a level of activity is accurately described as rural or urban is no easy task. *See 1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 724 P2d 268 (1986). Goal 11, Public Facilities and Services, states that Rural Facilities and Services "refers to facilities and services suitable and appropriate solely for the needs of rural lands." That language would suggest that a rural fire protection service is one scaled to meet rural needs only.

[2] Our approach to construing a statute is to look first to the text and relevant context of the provision. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993). In this case, we agree that ORS chapters 215 and 478 offer relevant context within which to interpret the text of ORS 215.283(1)(w).

that, had the legislature intended that the facilities authorized in ORS 215.283(1)(w) be limited to those that provided fire protection services exclusively to rural areas, it would have so specified in the statute.

LUBA then reviewed the district's service area and found that, of the total service area for the proposed fire station, only five percent would be within a UGB. Also, between 67 and 76 percent of the station's incident responses would be to rural areas. From those facts, LUBA concluded the station would serve primarily rural areas.

LUBA next considered the fire district's intention to provide emergency medical services (EMS) and on-site training. In petitioner's view, ORS 215.283(1)(w) does not list, and should not be understood to permit, EMS and training within EFU-zoned land. LUBA looked to what it believed to be the relevant statutory context and found that ORS 478.260(3) authorized rural fire protection districts to offer EMS. LUBA noted that the legislature must have been aware of this authorization when it enacted ORS 215.283(1)(w) and concluded that the legislature did not intend to prohibit providers of rural fire services authorized in ORS 215.283(1)(w) from offering emergency medical and training services.

Finally, LUBA considered whether the station is a utility facility. ORS 215.283(1)(d) permits utility facilities on EFU-zoned land, provided that it is not feasible to place them elsewhere. LUBA rejected petitioner's assertion that the district's fire station should be viewed as both a fire station and a utility facility. LUBA concluded that the statutory provision specifically applicable to the issue before it was ORS 215.283(1)(w) and that the district need not demonstrate the station's compliance with more general statutes governing placement of utility facilities in EFU zones.

On review, petitioner again argues that ORS 215.283(1)(w) does not permit the proposed fire station. In petitioner's view, LUBA misconstrued the terms "rural" and "rural fire protection services" as they appear in the statute. Petitioner argues that the context in which the statute appears makes it clear that nonagricultural uses are not allowed in an EFU zone unless they are specifically listed in the statutes. Petitioner understands that the permission

given in ORS 215.283(1)(w) is for rural fire protection services for rural areas only, not fire protection services for urban areas or for a mix of rural and urban areas. Petitioner relies on our recent decision in *Warburton*, in which we again held that local and state provisions permitting nonfarm uses in EFU zones should be construed, to the extent possible, consistently with the overriding policy of preventing agricultural land from being diverted to nonagricultural use. *See also Nelson*, 115 Or App at 458-59; *McCaw Communications, Inc. v. Marion County*, 96 Or App 552, 555, 773 P2d 779 (1989). Petitioner also finds support in ORS 215.243, in which the legislature announced a policy that the preservation of a "maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources." Petitioner posits that, if the legislature meant to allow rural fire districts to site facilities without regard to the type of service provided, ORS 215.283(1)(w) would refer to "fire service facilities *operated by* rural fire protection *districts*."

■       We are well aware of the legislative policy to preserve agricultural land; however, that policy does not replace specific legislative authority to permit a nonfarm use on EFU-zoned land. *DLCD v. Jackson County*, 151 Or App 210, 217, 948 P2d 731 (1997), *rev den* 327 Or 620 (1998). Further, the legislature's use authorizations in ORS 215.283(1) are not limited to rural uses. *See Jackson Cty. Citizens' League v. Jackson Cty.*, 171 Or App 149, 158-59, 15 P3d 42 (2000). While petitioner's gloss on ORS 215.283(1)(w) and its relevant context offers a reasonable interpretation of the statute, we conclude that the county's and LUBA's interpretation are more persuasive. The statute says nothing of the organization, location, staffing, or scope of service of the fire service facility that will be providing rural fire protection services. The statute simply authorizes facilities that provide rural fire protection services. The parties inform us—and we have confirmed—that there is little legislative history to aid in answering the question presented in this case. We must assume, nonetheless, that the legislature was aware of the existence of ORS chapter 478 and of the provisions of that chapter creating rural fire protection districts and permitting

them to enter into agreements to provide services within cities. *See City of Salem v. Salisbury*, 168 Or App 14, 5 P3d 1131 (2000), *rev den* 331 Or 633 (2001). ORS chapter 478 includes nothing to suggest that rural fire protection services are anything other than services provided to a rural area *and* to such other areas as may be agreed between the district and the jurisdiction served. We doubt that the legislature intended, without saying so, that some entirely new and singularly limited rural fire protection service would be established to serve rural areas to the exclusion of nearby urban or urbanizable areas. We also suspect that, had the legislature wished to restrict rural fire protection district services within EFU zones, it would have taken specific action to do so.

■ In that regard, the legislature has been careful to limit the service area or clientele of another use permitted on EFU-zoned land. Under ORS 215.283(1)(v), a facility for processing farm crops may be located on a farm in EFU land, but the facility must obtain at least one-quarter of its crops for processing from the host farm. Further, the building housing the processing facility may not exceed 10,000 square feet of floor area. For whatever reason, the legislature saw fit to limit the facility in terms of the persons or entities providing service and its physical size. In the case before us, the only qualifying limitation on the fire service facility is that it be rural. We see no indication that the legislature intended to limit the fire protection services offered by a rural fire protection district simply because the fire station is located in an EFU zone. We conclude that a fire service facility providing service to predominately rural areas and that receives most of its requests for service from rural areas is permitted under ORS 215.283(1)(w).

■ Petitioner next addresses LUBA's rejection of its argument below asserting that ORS 215.283(1)(w) permits only rural fire protection services and does not permit emergency medical services or training. Petitioner is correct that LUBA relied on the county's hearings officer, who found the EMS and training activities to be a common accessory function to fire protection services. The hearings officer heard evidence that EMS activities are an ordinary and normal part of any fire protection program and that training is a necessary

part of providing services. He found that rural fire and medical services are integrated in practice and that "appropriate-scale medical and training facilities, such as proposed in this case, are necessary and common accessory functions for a rural fire station." The parties do not claim that the record does not include substantial evidence to support those findings. Because providing emergency medical services and training is a common accessory to rural fire protection services, we conclude that LUBA did not err in holding that EMS and training are included within the statutory authorization for fire service facilities providing rural fire protection on EFU land.

■      Petitioner also questions LUBA's conclusion that the county need not have amended its zoning ordinance before allowing the fire station. In petitioner's view, enactment of ORS 215.283(1)(w) does not result in permission to site the fire station in a county EFU zone under the county's zoning ordinance. Petitioner relies on ORS 197.646(1), which requires that local governments amend their land use regulations as needed to comply with changes in statutes or in Land Conservation and Development Commission (LCDC) goals and rules.

We do not agree with petitioner's understanding of the proper application of ORS 197.646. The first subsection of that statute does require local government legislative action to bring its comprehensive plan and land use regulations into compliance with new or amended statutes, goals, and rules. ORS 197.646(3) expressly states that, upon failure of the local government to perform this function, "the new or amended goal, rule or statute shall be directly applicable to the local government's land use decisions." It therefore makes no practical difference whether or not the county immediately incorporates the new law into its code. The newly enacted statute is applicable in the county regardless of the speed with which the county complies with ORS 197.646(1).

■      Also, notwithstanding the permissive term "may" in ORS 215.283(1), counties are not permitted to attach additional regulations to the uses listed in the statute. *See Brentmar v. Jackson County,* 321 Or 481, 496, 900 P2d 1030

(1995). We understand petitioner to disagree and to find support in OAR 660-033-0130, an LCDC rule permitting counties to "provide additional limitations and requirements to meet local concerns as authorized by law" on uses allowed under ORS 215.283(1). However, the concern that petitioner would have the county address, or, in reality, prohibit is placement of a fire station on EFU zoned land, serving some urban areas as well as rural areas. Because we do not agree that ORS 215.283(1)(w) lends itself to such a limitation, LCDC's rule does not support petitioner's argument. We conclude that, by operation of ORS 197.646(1) and (3), the legislature's inclusion of "fire service facilities providing rural fire protection services" in the list of permissive uses in an EFU zone means that Clackamas County's land use regulations are now effectively overridden to permit the use without additional county restrictions.

Petitioner makes a strained argument about ORS 197.047, requiring notice to local governments whenever the legislature or LCDC enacts or promulgates a statute or rule that would limit or prohibit otherwise permissible land uses. According to petitioner, before the adoption of ORS 215.283(1)(w), fire stations would have been considered utility facilities under ORS 215.283(1)(d) and could have provided service to urban areas if that service were found necessary. With passage of the more specific ORS 215.283(1)(w), the use would no longer be allowed under petitioner's view that the appropriate service under the new statute must be provided to rural areas only. Petitioner then says that, because no notice was given, the county's hearings officer should not have relied on ORS 215.283(1)(w). LUBA found ORS 197.047 inapplicable to this case, and so do we. ORS 215.283(1)(w) does not signal a new restriction on previously permitted land uses; it announces specific permission for a use. Even if we were to hold that the enactment of ORS 215.283(1)(w) amounted to a new restriction, it is not immediately clear that ORS 197.047 has the effect of delaying implementation of a new law or rule until the required notice is given.

Finally, petitioner asserts the fire station is a "utility facility" under ORS 215.283(d), citing LUBA's comment that a use of land may constitute both a utility facility and some

other use. *Cox v. Polk County*, 39 Or LUBA 1 (2000), *reversed on other grounds* 174 Or App 332, 25 P3d 970 (2001). Petitioner argues that LUBA erred in concluding that the "utility facility" in ORS 215.283(1)(d) was a general use category while the "fire service facility" in ORS 215.283(1)(w) was a specific use category and that the more specific category should be applied. We reject petitioner's view that the statutory requirements governing the general category of "utility" should control a use that fits quite exactly within a specific statutory category with its own requirements. In *Cox*, we reviewed common definitions of "utility" and "public utility," *see* ORS 757.005(1)(a), and concluded that, as used in ORS 215.283(1)(d), "utility facility" meant

> "equipment or apparatus, whether standing alone or as part of a structure, that functions to perform or provide, in whole or in part, a service such as the production, transmission, delivery or furnishing of electricity or natural gas, the purification of drinking water, or the treatment of solid or liquid waste." *Id.* at 343-44.

The examples provided in that definition do not include a fire station. They are not, however, intended to encompass the entire universe of utility facilities. Nevertheless, we conclude that a fire station is not a utility facility. Although a fire station performs a public service, it does not share such qualities as production, delivery, or treatment of a measurable commodity, such as electricity or water. A fire facility performs a community emergency service. While it may be considered a utility in some instances, the fact that the legislature considered it sufficiently distinct to warrant its own use category in ORS 215.283(1)(w) means that it is to be treated separately from the larger class of facilities listed in ORS 215.283(1)(d). With the enactment of ORS 215.283(1)(w), the legislature acted specifically to permit fire service facilities for rural fire protection services. That act replaces any similar permission for such facilities under the very broad classification of "utility." *Mercy Health Promotion v. Dept. of Rev.*, 310 Or 123, 130, 795 P2d 1082 (1990). ORS 215.283(1)(d) is not applicable in this case.

Affirmed.