Argued and submitted December 3, 2004, motion to dismiss petition as nonjusticiable denied; affirmed January 26, 2005

Romie A. RHODES,
*Respondent,*

*v.*

CITY OF TALENT,
*Respondent,*

*and*

OREGON DEPARTMENT OF TRANSPORTATION,
*Petitioner.*

2004-076; A126346

104 P3d 1180

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Stephen Mountainspring argued the cause for respondent Romie A. Rhodes. With him on the brief was Dole, Coalwell, Clark, Mountainspring, Mornarich & Aitken, P. C.

No appearance for respondent City of Talent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Petitioner, Oregon Department of Transportation (ODOT), seeks review of a Land Use Board of Appeals (LUBA) decision remanding the City of Talent's decision regarding certain proposed improvements to Oregon Highway 99 within its city limits. *Rhodes v. City of Talent*, 47 Or LUBA 574 (2004). We affirm.

The city's resolution at issue in this case authorizes city officials to sign a cooperative improvement agreement between the city and ODOT, and it also approves an access management plan (AMP) related to the project.[1] Under an ODOT administrative rule governing access management plans, such plans must be consistent with any applicable local government's transportation system plan (TSP) and with the local government's comprehensive plan.[2] Also, AMPs must be adopted into the local jurisdiction's TSP under OAR 734-051-0155(4)(k) unless subject to an exemption that is inapplicable to this case. LUBA ruled that the city's resolution was a "land use decision" within the meaning of ORS 197.015(10)(a) because it concerned the adoption, amendment, or application of a comprehensive plan provision. In reaching that conclusion, LUBA relied on OAR 734-051-0155(4)(k).[3] LUBA explained:

---

[1] OAR 734-051-00040(4) defines an "access management plan" as follows:

"a plan for a designated section of highway that identifies the location and type of approaches and necessary improvements to the state highway or local roads and that is intended to improve current conditions of the section of highway by moving in the direction of the access management spacing standards. Both [ODOT] and the appropriate local jurisdiction must adopt the Access Management Plan, and the plan should be included in a Transportation System Plan."

[2] OAR 660-012-0005(32) defines a TSP as "a plan for one or more transportation facilities that are planned, developed, operated and maintained in a coordinated manner to supply continuity of movement between modes, and within and between geographic and jurisdictional areas." LUBA recited that the city has a TSP as part of the city's comprehensive plan.

[3] OAR 734-051-0155 provides, in part:

"(4) Access Management Plans and Access Management Plans for Interchanges comply with all of the following:

"(a) Are prepared for a logical segment of the state highway and include sufficient area to address highway operation and safety issues and development of adjoining properties including local access and circulation.

"Because OAR 734-051-0155(4)(d) requires that AMPs must be consistent with the city's TSP and because OAR 734-051-0155(4)(k) requires that the AMP be 'adopted into' the city's TSP, the city's adoption of the AMP 'concerns the adoption, amendment or application of * * * [a] comprehensive plan provision' within the meaning of ORS 197.015(10)(a) and, for that reason, is a land use decision subject to LUBA jurisdiction."

*Rhodes*, 47 Or LUBA at 582 (brackets in original). Because the city approved the AMP without incorporating it into its TSP, LUBA remanded the city's action back to the city to adopt the AMP as part of its TSP and to make findings that it determines are necessary to explain that amendment.

On judicial review, ODOT does not object to LUBA's remand to the city for incorporation of the AMP into the city's TSP. Rather, it focuses on a portion of LUBA's reasoning for determining that the city's action constituted a land use decision, and it argues that LUBA mistakenly treated its agreement with the city as a land use decision. Specifically, ODOT understands the following to express LUBA's allegedly mistaken holding that the cooperative agreement, without more, constitutes a land use decision:

"Before turning to petitioner's assignment of error, we note that we would almost certainly conclude that the challenged decision is a land use decision, even if OAR 734-051-0155(4)(k) did not expressly require that the AMP be adopted as part of the city's TSP. At the very least, the challenged decision is both a contract and a city decision to authorize construction of transportation facility improvements. It may well be that those improvements are already envisioned by and consistent with the TSP, as respondents

---

"* * * * *

"(d) Are consistent with any applicable adopted Transportation System Plan, Local Comprehensive Plan, Corridor Plan, or Special Transportation Area or Urban Business Area designation, or amendments to the Transportation System Plan unless the jurisdiction is exempt from transportation system planning requirements under OAR 660-012-0055.

"* * * * *

"(k) Are approved by the Department through an intergovernmental agreement and adopted by the local government, and adopted into a Transportation System Plan unless the jurisdiction is exempt from transportation system planning requirements under OAR 660-012-0055."

argue. However, the TSP is more general and does not provide the kind of detail that the AMP does in describing the project. Neither the Agreement nor the AMP make any attempt to establish that the project envisioned by the Agreement and AMP is consistent with the TSP. Without expressing any position on the merits of petitioner's arguments, we are unable to agree with respondents that the consistency of the proposed project with the TSP can be determined without a decision by the city, with supporting findings that explain why the project is consistent with the TSP. Such a decision will be required to apply the TSP and will be a land use decision even if it were not required by OAR 734-051-0155(4)(k) to be adopted as an amendment to the TSP."

47 Or LUBA at 582.

In response, respondent Rhodes moves to dismiss ODOT's petition for review on the ground that ODOT is seeking review of *dicta* and, in the alternative, asks that we affirm. He characterizes ODOT's petition for review as asking this court to rule on a hypothetical state of facts that assumes that the city's decision did not adopt the AMP. He concludes that ODOT's petition amounts to nothing more than a request for an advisory opinion and that therefore this court is not presented with a justiciable controversy. *See Utsey v. Coos County*, 176 Or App 524, 548, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003); *Jackson Cty. Citizens' League v. Jackson Cty.*, 171 Or App 149, 154, 15 P3d 42 (2000).

At the outset, we do not understand that LUBA's discussion quoted above indicates its understanding that an agreement between ODOT and the city about how to proceed with a highway improvement project, without more, is a land use decision under ORS 197.015(10). LUBA's discussion does not address the legal status of ODOT's agreement in isolation; rather, its decision is based on all the facts before it, including the fact that the city approved an AMP without adopting it into the city's TSP. Had LUBA intended to hold that an intergovernmental agreement about a construction project, by itself, is necessarily a land use decision, it could have said so with greater clarity than is evident in the text of its opinion.

In addition, the balance of LUBA's opinion offers no support for ODOT's interpretation. Throughout its discussion, LUBA stressed the fact that the city's action included adoption of the AMP, and LUBA did not discuss the legal significance of the agreement portion of the city's action. The parties' arguments before LUBA support that understanding. The basis of LUBA's opinion is that an AMP must be consistent with a TSP before the adoption is lawful. The city argued to LUBA that it could adopt the AMP as a part of its TSP at a later date and asserted, from that premise, that the present proposed improvements therefore did not involve the adoption, amendment, or application of state or local land use regulations. However, LUBA responded:

"If the challenged decision made it clear that the city did not adopt the AMP until the city's TSP is amended to include the AMP, then we would likely agree that the challenged decision is not the city's land use decision in this matter. But no party cites anything in the Agreement or the AMP that obligates the city to adopt the AMP as part of the TSP or precludes ODOT from proceeding with developing final engineering plans and constructing the improvements described in the AMP in advance of a city decision to amend the TSP to include the AMP. While the city is obligated under ODOT's rules to adopt the AMP into its TSP, it has adopted the AMP without amending its TSP to do so."

*Rhodes*, 47 Or LUBA at 580-81 (footnote omitted.)

LUBA also explicitly rejected ODOT's argument that the exception in ORS 197.015(10)(b)(D) to the definition of "land use decision" applied to the case before it. The exception removes from the definition of "land use decision" those actions that determine final engineering design, construction, operation, maintenance, repair, or preservation of a transportation facility otherwise authorized by and consistent with the comprehensive plan and land use regulations of the affected jurisdiction. LUBA said that neither the agreement nor the AMP is accurately described as determining the final engineering design or the other acts included in the statutory exemption. LUBA thereafter concluded that the consistency of the proposed project with the city's TSP could not be determined without a decision by the city accompanied

by findings explaining why the project is consistent with the TSP.

Finally, we hasten to add that we make no determination regarding the parties' apparent shared interest in whether, as a legal matter, the authorization, by itself, to enter into a cooperative improvement between a local jurisdiction and ODOT regarding an improvement project falls within the statutory definition of a land use decision.[4] *See also City of Pendleton v. Kerns*, 294 Or 126, 133-34, 653 P2d

[4] ORS 197.015 provides, in part:

"(10) 'Land use decision':

"(a) Includes:

"(A) A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(I) The goals;

"(ii) A comprehensive plan provision;

"(iii) A land use regulation; or

"(iv) A new land use regulation;

"(B) A final decision or determination of a state agency other than the commission with respect to which the agency is required to apply the goals; or

"(C) A decision of a county planning commission made under ORS 433.763;

"(b) Does not include a decision of a local government:

"(A) Which is made under land use standards which do not require interpretation or the exercise of policy or legal judgment;

"(B) Which approves or denies a building permit issued under clear and objective land use standards;

"(C) Which is a limited land use decision;

"(D) Which determines final engineering design, construction, operation, maintenance, repair or preservation of a transportation facility which is otherwise authorized by and consistent with the comprehensive plan and land use regulations; or

"(E) Which is an expedited land division as described in ORS 197.360;

"(c) Does not include a decision by a school district to close a school;

"(d) Does not include authorization of an outdoor mass gathering as defined in ORS 433.735, or other gathering of fewer than 3,000 persons that is not anticipated to continue for more than 120 hours in any three-month period; and

"(e) Does not include:

"(A) A writ of mandamus issued by a circuit court in accordance with ORS 215.429 or 227.179; or

"(B) Any local decision or action taken on an application subject to ORS 215.427 or 227.178 after a petition for a writ of mandamus has been filed under ORS 215.429 or 227.179.

992 (1982) (addressing local government decisions having a significant impact on land use as land use decisions falling within LUBA's review authority). Here, the city's resolution adopted an AMP as well as provided authorization for the city to enter into a cooperative improvement agreement. In light of the content of the city's resolution, this case does not present the issue of whether an authorization to enter into a cooperative improvement agreement by itself constitutes a land use decision.[5]

Motion to dismiss petition as nonjusticiable denied; affirmed.

---

"(11) 'Land use regulation' means any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan."

[5] Consequently, contrary to respondent's assertion, our holding in this case is not advisory in nature.